## Mathews *v.* Stephenson.

Trust created for minor children, and agent appointed to trade with the property for their benefit; debts contracted by the agent in the course of the business may be recovered, and satisfaction had out of the trust estate.

A father, being desirous of giving employment to his son, to enable him to support his, the son's minor children, and of securing them a portion of his estate, conveyed a house and stock of goods in a store to a third person, in trust for such children, appointing his son agent for the children, and authorizing him to reside in the house, take charge of the goods, and carry on the business of buying and selling for the benefit of such children; for which he was to receive a fixed compensation, and the property conveyed be subject to all legal charges and expenses in carrying on the business. The son purchased goods on credit for·the purpose of conducting the business. The trust property is subject to that debt.

The trustee and the children should be parties to the action to enforce the right; and that may be *assumpsit*, as a substitute for a bill in equity.

And where judgment was for defendants, and writ of error taken, the cause will be reversed for the purpose of adding new parties, or to enable the party to begin *à novo* against proper parties.

In error from the Common Pleas of Mercer county.

*Oct.* 7. It appeared from the special verdict that William Stephenson, by deed dated October 20, 1840, reciting that his son Thomas had become unable to pay his debts and support his family, and the desire of William *to procure him employment for that purpose,* and secure to his children born, and to be born, a portion of the grantor's estate, conveyed to Oliver Stephenson, his heirs and assigns, a house and lot in Mercer, in trust for the use of the children of Thomas, viz. Margaret and Samuel, and such other children of said Thomas as should thereafter be born. The deed further assigned all the household furniture, and divers other personal property belonging to the grantor, then in the possession of Thomas,

and all the store-goods and implements for selling the same, and lumber, produce, and all effects then in his possession as agent of the grantor, and all debts due to the grantor in said county, and certain other debts specified, upon the same trusts as were declared of the realty.    The deed then recited that the grantor, having full confidence that Thomas would-manage the property conveyed for the benefit of his children born and to be born, thereby constituted him sole agent and guardian of such children during their minority, and authorized him to reside on the property *and take charge thereof, and of the effects connected therewith.   "Also to conduct the business of buying and selling goods for the benefit of the said children ; and for that purpose to have the custody of all the goods, &c., and to sell and dispose of the same, and the moneys arising therefrom to invest in other property, real and personal, in his discretion deemed most beneficial for the children;"* with power to him to sell the real estate, and to account to them at twenty-one.    It was further provided that on Oliver signing the annexed power, appointing Thomas agent, &c., his liability as trustee should cease ; and that Thomas should receive $700 *per annum* for his services, and not be liable for any rent for the premises resided on.    Then followed this clause—"And the property and funds hereby granted *shall be subject to all legal charges and expenses in carrying on the business, and all debts* heretofore contracted by Thomas in carrying on the business as agent for the grantor, shall be paid out of the property, &c. hereby conveyed," so that the grantor should be indemnified.

Pursuant to this deed, Oliver, the grantee, executed the annexed deed, appointing Thomas his agent and the agent of the children for whom Oliver was trustee, to take charge of the property and "conduct the business as in the said deed contemplated."

The verdict further stated that, in 1838, Thomas Stephenson came to live in Mercer, as agent of William ; and that he held goods valued at from $5000 to $7000 ; and that the house mentioned in the deed was worth from $2500 to $3500 ; that the stock was kept at the same value until 1844, when Thomas removed, and on his return it was diminished ; that in October, 1842, Thomas Stephenson purchased goods of the plaintiff for the purpose of carrying on the trust ; and that one of his children had been born since the trust was created.

The action was assumpsit against Margaret, Samuel, Oliver, William, and Mary Stephenson, minors, by their guardian, Thomas Stephenson.  Thomas dying *pendente lite,* the guardian of the chil-

dren was substituted. And the question was, whether there could be a recovery to be levied out of the trust estate. The court below gave judgment for the defendants.

*Pearson* and *Sullivan*.—There could be no doubt that the principals would be liable under an agency such as this, (Story on Agency, §§ 126, 127, 58, 60, 61, 97; Martzell *v.* Stauffer, 3 Penna. Rep. 398,) but here the principals are minors. But the owner of the property, when conveying it away, subjected it to this agency and its consequences; there was therefore a competent authority to bind the property, though not the persons of the beneficial owners. The power to mould the judgment appears from Peries *v.* Aycinena, 6 Watts & Serg. 243.

*Stewart* and *Maxwell*, contra.—A guardian or trustee cannot charge the fund; Forster *v.* Fuller, 6 Mass. Rep. 53; nor is the suit rightly against him; it should rather be against the creator of the trust, who alone is the principal. But he had no intention to subject himself or the fund to the contracts of the agent, who had already by his misfortunes become insolvent.

*Nov.* 10. COULTER, J.—Equity is part and parcel of the law of the state. The courts will therefore adopt chancery rules to prevent a failure of justice; and when the common-law forms are inadequate to do justice, the courts may, in order to reach the equity of a case, so mould and adapt their forms to the circumstances, as to accomplish that purpose; Jordan *v.* Cooper, 3 Serg. & Rawle, 578. Many instances in our judicial history might be enumerated, both in the adaptation of the declaration and pleas, and also in the form of the judgment; but they will readily occur to the mind of the practitioner in the profession. As the fund mentioned and described with the deed of trust from Oliver Stephenson to Thomas Stephenson, as also the real and personal estate therein specified, is undoubtedly liable for the debts contracted by the trustee and agent on the faith and responsibility of that fund, in pursuance of the business directed to be carried on for the benefit of the *cestui que trust,* according to the directions of the deed, (7 Watts, 547,) the only question is in what mode it can be reached in our courts. In chancery, where the remedy would have been found in England on a contract of this nature, all the parties must be named. In a bill in chancery, all persons interested must be parties either as plaintiffs or defendants: as it is the constant aim of a court of equity to do complete justice to all persons interested,

and thereby prevent further litigation. Where any person is out of the jurisdiction of the court who should be made a party, and that is stated in the bill, the court will in most cases proceed without him; and if the possession or power over the property is in the other parties, the court will act upon the bill; 2 Maddox, Chan. 177; otherwise a decree would be imperfect: all the parties not being before the court; 2 Grant's Chancery Practice. In adopting the chancery principle in order to reach the fund, we must adhere as near as possible to the practice of chancery in relation to the parties who ought to be before the court: because much of the justice of the case may depend upon them all having an opportunity of being heard. Thomas Stephenson, the trustee and agent who managed the fund, having died after the debt was contracted and after the institution of this suit, Lewis Weaver, who was appointed guardian of the beneficiaries by the Orphans' Court, was substituted in his stead. This was all right and proper, because he was the proper person to answer and be heard on behalf of the minors. But Oliver Stephenson, the grantee in the deed of trust, ought also to have been a party to the suit. He was a party to the transaction, and might have had an interest. He might, for instance, allege that the property was not responsible for the debt, and that it was not contracted within the scope of the power granted to the trustee. As he was not made a party, the judgment must be reversed, and the case be sent back. But as in chancery, a demurrer lies for insufficient parties, or it may be pleaded, or an objection may be taken at the hearing; so in this case, the same course might have been pursued. But there was no demurrer, no plea in abatement, nor any objection made at the hearing. But it may be considered as being properly under consideration, in the court below, and here, upon the facts set out in the special verdict. In that case it must be regarded as an objection made on the hearing; and in that category the bill in chancery would not be dismissed, but stand over, with liberty to amend, or file a supplementary bill, upon payment of the costs of hearing; Harr. 39; 2 Grant's Chan. Prac. 26. By analogy, the court below might, perhaps, give leave to file a new narr., including Oliver Stephenson as a defendant, and make a rule upon him to show cause why he ought not to be made a party to the cause: in order to reach the property which is in the possession and power of the other parties. But it would be a large step towards the adoption of chancery forms, where the statutes have not authorized their adoption. The safest course for the plaintiff below is to begin *de novo*.

It is necessary, perhaps, to notice a point strongly urged by the able counsel for the defendant in error, inasmuch as the cause must undergo further hearing. That is, that the fund was not answerable, because the trustee and agent was not authorized to contract debts. The authority given to the trustee is very ample; so general and comprehensive, that when applied to and explained by the usual mode of doing business of the kind intrusted to him in this community, it must be considered as sufficient power to contract debts. The particular clause in the deed, which was most the subject of observation, is the following:—" And generally to have the safe custody and use of all the property, claims, and effects, and to sell and dispose of the same, and the money and effects arising from such sale, again to invest in other goods and property, as he may consider most for the use and benefit of such children." Now, when it is considered that a great portion of the goods and effects was what was commonly called *a store*, which required to be renewed from time to time; and that by the almost universal custom of the country stores, goods are trusted out to customers, and the stock renewed, upon the faith of the debts so accrued; we cannot doubt but that it was the intention of the grantor to give the power of contracting debts upon the credit of the fund or property. Such power would seem to be necessarily implied in a general power to carry on a store. The more especially as he expresses the most unbounded confidence in his son, who was the trustee; and that he would conduct the whole business for the benefit of the beneficiaries and objects of the grantor's bounty. It would be monstrous to hold that the trustee and agent himself, altogether without property, as appears from the deed of trust, should be allowed to carry on business on the strength of the trust property, according to the custom of the country, and then permit him, or any one else, to allege that the trust property was not liable, because he was not expressly authorized to contract debts, in so many words. The stock of the beneficiaries was repaired and renewed by these debts contracted; they got the benefit of them, and the trust property ought to be liable.

It may be further observed, that when proper parties are made to any future proceeding, the court must take care so to mould and construct the judgment as not to affect parties *pro forma*, nor to reach any thing by process, but the trust property.

Judgment reversed, and a *venire de novo* awarded.