## Novickas, et al., *v.* Krauczunas, et al., Appellants.

*Church law—Title to property—Act of April 26, 1855, P. L. 328 —Circumvention of court's decree—Equitable relief—Standing of plaintiffs.*

Where the Supreme Court has directed a reconveyance of church property from a bishop of the Roman Catholic Church, in whom by church law it should vest, and to whom it had been conveyed for a temporary purpose, to trustees for the congregation on the ground that under the Act of April 26, 1855, P. L. 328, the title was in the congregation, and subsequently has refused to order a legal conveyance of the property to the bishop, as trustee, to be held by him in accordance with the laws of the Catholic Church, although a resolution directing such conveyance had been adopted by the congregation, on the ground that this would be in violation of the law of Pennsylvania, and thereafter an episcopal decree was issued by the bishop of the diocese, which after reciting "that the court has decided that the Catholic bishop of Scranton must hand over to a band of excommunicated apostates the deed of the Catholic Church of St. Joseph's," and placed said church "under interdict until the members of the congregation shall turn these faithless men out and place the church once more under the care of the Bishop of Scranton according to the laws of the Catholic Church," and forbade Catholics to enter the church or services to be held therein until the removal of the interdict, this can only be deemed an effort to circumvent the decision of the court. Where, therefore, certain of the congregation, who have obeyed the order of the bishop, and refrained from entering the church, seek by bill in equity to restrain other members of the congregation from permitting certain ministers or pastors, not regularly ordained priests of the Catholic Church in good standing, to officiate and conduct worship in said St. Joseph's Church, and to restrain said ministers and pastors from so conducting worship, the bill will be dismissed. As the plain purpose of the bill is to accomplish indirectly what the court has repeatedly decided cannot be done directly, plaintiffs have no standing to ask equitable relief.

Argued Feb. 26, 1913.   Appeal, No. 11, Jan. T., 1913, by defendants, from decree of C. P. Lackawanna Co., In Equity, March T., 1912, No. 6, granting injunction in

case of Kazimer Novickas, between Pius Novickas, Matencas Mardosa and Stanis Urbanas for themselves and all other members of St. Joseph's Lithuanian Catholic Congregation of the City of Scranton, v. Andrew Krauczunas, John Appn, John Siwaka, Anthony Swirukis, Charles Cusick, John Jurkis, Adam Grudis, Frank Palutis, William Antonowicz, Francis Hodur and Stanislaus Mickiewicz (original defendants), and William Sartonowicz, Anthony Aukszciunas, and Frank Marcinkiewicz, committee permitted to intervene, claiming to represent St. Joseph's Lithuanian Catholic Congregation of the City of Scranton, defendants and appellants. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Bill in equity to restrain conduct of religious services in violation of church law in a Roman Catholic Church. Before NEWCOMB, J.

The facts are stated in the opinion of the Supreme Court and in Krauczunas v. Hoban, 221 Pa. 213, and in Mazaika v. Krauczunas, 233 Pa. 138.

The court made a decree "That the said defendants, Reverend Francis Hodur and Stanislaus Mickiewicz, their agents, workmen, laborers and servants, and all and every one of them, be and are permanently enjoined and restrained from preaching, conducting religious worship, or in any wise officiating as ministers in St. Joseph's Lithuanian Catholic Church at Scranton, Pa., and occupying or using the said church or the property of said congregation, and intermeddling in any manner with the temporal affairs of said congregation.

"That the defendants, Andrew Krauczunas, John Appn, John Siwaka, Anthony Swirukis, Charles Cusik, John Jurkis, Adam Grudis, Frank Palutis and William Antonovicz, their agents, workmen, laborers and servants, and all and every one of them, be and are permanently enjoined and restrained from installing in the church of St. Joseph's Lithuanian Catholic Congregation

situate on lots numbers 11, 12 and 13 on North Main avenue in the City of Scranton, Pa., the said Reverend Francis Hodur, Reverend Stanislaus Mickiewicz, or any pastor or minister other than a regularly ordained priest of the Catholic Church in good standing; from establishing any form of worship therein other than that prescribed and authorized by said Catholic Church through a regularly ordained priest in good standing; from interfering with or obstructing the proper function of any regular priest or minister of the said Catholic Church whom the proper authorities of said Catholic Church have appointed, or may appoint, as pastor of said church and congregation; and diverting said church and property of said congregation to any form of public worship other than that prescribed and authorized by said Catholic Church."

Defendants appealed.

*Errors assigned* were various rulings on fact and law and the decree of the court.

*Wm. J. Hand,* with him *A. A. Vosburg,* for appellants.

*John G. Johnson,* with him *T. P. Hoban* and *John P. Kelly,* for appellees.

OPINION BY MR. JUSTICE STEWART, March 31, 1913:

In Long, et al., v. Harvey, et al., 177 Pa. 473, we have this concise and explicit statement of the law as it is derived from our repeated decisions touching judicial interference in disputes between members of the same religious body: "Our power of adjudication in disputes between warring church parties is limited. In such cases we can look into the rules of a church organization only to ascertain the church law, and if that be not in conflict with the law of the land, all we can do is to protect the rights of parties under the law they have made for themselves." It is the qualification "if that be

not in conflict with the law of the land" that gives the statement special significance in connection with the present case, as we shall see. In Krauczunas v. Hoban, 221 Pa. 213, where the effort was on part of the trustees to require the bishop of the diocese, to whom the title of this particular church property had been conveyed for a special and temporary use, to reconvey the same to the trustees of the church in accordance with the expressed desire of a majority of the congregation at a meeting regularly held, resistance was made distinctly and expressly on the ground that when a congregation formed for the purposes of religious worship according to the faith and rites of the Catholic Church, has accepted the pastor assigned to it by the bishop of the diocese, and has placed itself under the authority of the bishop and submitted itself to his authority in all ecclesiastical matters, the title to its property must be taken and held as provided by the canons of the Catholic Church; and that the property acquired by the congregation under such circumstances is the property of the church, subject to its control, and must be held in the manner directed by its laws. Such were the findings and conclusions of the court below which led to a dismissal of the bill. In the opinion reversing this decree and directing a reconveyance of the property we said, "Conveyance to the church is not pretended; nor is forfeiture on the part of the congregation. Nothing is asserted in this connection but ecclesiastical rules and regulations, which, except as they are aided by legal conveyance, are ineffectual to divest any owner of his property. But more than this the position taken by defendant and sustained by the court, is in direct opposition to the law, whose supremacy, over all ecclesiastical rules and regulations, when rights of property are concerned, is not to be questioned. The Act of April 26, 1855, P. L. 328, Section 7, provides that 'whensoever any property, real or personal, shall hereafter be bequeathed, devised or conveyed to any ecclesiastical corporation, bishop, ec-

clesiastic or other person, for the use of any church, congregation, or religious society, for religious worship or sepulture, or the maintenance of either, the same shall not be otherwise taken and held, or inure, than subject to the control and disposition of the lay members of such church, congregation, or religious society, or such constituted officers or representatives thereof,' " etc. In Mazaika v. Krauczunas, 233 Pa. 138, the appeal was from a decree directing a reconveyance of this particular church property by the trustees to the bishop pursuant to a resolution adopted by a majority of the congregation, as found by the court, at a regular meeting. The resolution directed that the Right Reverend Michael J. Hoban be declared trustee, to hold, as such trustee, all property of said congregation, and the title thereto, in accordance with the laws, rules and usages of the Catholic Church, in the diocese of Scranton. These laws, rules and regulations, as defined by Bishop Hoban, not only require that the title to the congregational property must be in the bishop of the diocese, but that the members of the congregation have no right of control whatever in the matter. In reversing this decree we said, "In view of the plain words of the statute thus called to their attention as to the exclusive right of property in the congregation, the unquestioned sovereignty of the law where rights of property are involved, the legal inhibition against the bishop, qua bishop, exercising control of the church property, the positive conflict in this respect between the rules and regulations of the Catholic Church and the statute laws of the State, what other conclusion can be reached than that the action of the meeting of the congregation, as expressed in the resolution we have referred to, and at which it is claimed Bishop Hoban was elected trustee, was a clear attempt to invest that particular ecclesiastic with an authority over the congregational property which the law expressly forbids." We further said in that case, "The fact of conflict between the rules and

regulations of the Catholic Church and the laws of the State in this regard, remains. It is idle to dispute such fact; it is too patent to be questioned, and further discussion of it would be but wasted effort." The case now before us can only be regarded as another attempt to circumvent the law and take from the congregation the right of control and ownership in its own property, a right confirmed to it by the laws of the land. A brief reference to what followed upon the decision of this court in Krauczunas v. Hoban, supra, will make this plain. Immediately upon the rendering of that decision the bishop of the diocese issued his episcopal decree wherein, after stating "That the court has decided that the Catholic bishop of Scranton must hand over to a band of excommunicated apostates the deed of the Catholic Church of St. Joseph's," he proceeded to place the church of St. Joseph "under interdict until the members of the congregation shall turn these faithless men out and place the church once more under the care of the Bishop of Scranton according to the laws of the Catholic Church." This was followed by the injunction that "no Catholic service shall be held therein, nor shall any Catholic enter therein without incurring ecclesiastic censure until the interdict shall be removed." It was not alleged in the interdict, nor did it appear anywhere in the evidence of the case, that these men holding the office of trustees, and here denounced as apostates, had incurred ecclesiastical censure for any other reason than that they had defended successfully the right of the congregation of which they were the representatives to hold and own its property under the laws of the land. The result of the decree was that many members of the congregation, including the plaintiffs in this bill, rather than incur the ecclesiastical censure threatened in the decree, refrained from entering St. Joseph's church, and, with episcopal approval, established a separate place of worship which they have continued to maintain and attend. The interdict remains in full force, rendering

worship in St. Joseph's church according to the rites and ceremonies of the Catholic Church impossible, except on condition that the congregation "shall place the church once more under the care of the bishop of the diocese of Scranton according to the laws of the Catholic Church." The bill in this case alleges, and it is a fact found by the court, that the defendants who are asserting the right of the congregation to own and control the church property, have permitted certain pastors or ministers not regularly ordained priests of the Catholic Church in good standing, to officiate and conduct worship therein, and asks that these pastors and ministers, be restrained from intermeddling in any manner with the temporal or spiritual affairs of the congregation, and that the other defendants be restrained from installing in said church any pastor or minister other than a regularly ordained minister of the Catholic Church in good standing. The bill was sustained, and an injunction followed as prayed for.

The situation as thus presented is briefly this: the congregation can have no other worship in their church than that prescribed and authorized by the Catholic Church through a regularly ordained priest in good standing; and yet it can have no such worship so long as the church rests under episcopal interdict; and the interdict will be removed only as the members of the congregation will consent to an alienation of their church property such as the law of the land forbids quite as expressly and explicitly as it does the diversion of church property to other uses than those to which the property was originally dedicated and for which it must be held. Deprived of the right of Catholic worship in their own church by ecclesiastical authority, except upon conditions which that authority has no right to exact, and which the congregation is protected by law in resisting, it may well be questioned whether an abandonment of all religious worship in the church, under the interdict, would not be quite as much a diver-

sion of the property from its original uses, as permitting religious services therein to be conducted by ministers belonging to a different communion. But we decide nothing as to that. What we do decide, and all we decide, is, that because the evidence in the case makes it apparent that the purpose of the bill is to accomplish indirectly that which we have repeatedly declared may not be done, the plaintiffs in the bill have no standing to ask equitable relief. If they desire to proceed further, their appeal must be first to the ecclesiastical authority which has forbidden Catholic worship in the church for rescission of the episcopal interdict that inhibits it.

For the reasons given the appeal is sustained, the decree is reversed, and the bill dismissed at the costs of the plaintiffs therein.