# Novicky *v.* Krauczunas, Appellant.

*Equity—Church law—Title to property—Roman Catholic bishop —Diversion of property dedicated to a religious use—Injunction.*

A Roman Catholic bishop, to whom the legal title of a church property had been conveyed, was required by bill in equity to reconvey the legal title to trustees appointed by the congregation. After the conveyance, the bishop by episcopal decree placed the church under an interdict, prohibited the holding of Catholic worship therein, and forbade Catholics to enter the church so long as the interdict remained unrevoked. Several members of the congregation, who had obeyed the interdict, after unsuccessfully attempting by bill in equity to restrain a priest appointed by members of the congregation who had disobeyed the interdict from holding services in the building, similar to those of the Catholic Church, thereafter obtained a revocation of the episcopal decrees, and prayed that the priest previously complained of be enjoined from longer conducting services in the church, and that the members of the congregation be enjoined from installing therein any pastor or minister, other than a regularly ordained priest of the Catholic Church, and from diverting the church property to any form of public worship other than that prescribed by the Catholic Church. Defendants contended that their relation with the Catholic Church was severed by the interdict. *Held,* that the interdict was a disciplinary measure, and could not have the effect of diverting the property from the uses and purposes to which it had been dedicated; that while the interdict was in force, plaintiffs had no standing to complain, but with the interdict removed, the relief prayed for was properly granted.

Argued Feb. 23, 1914. Appeals, Nos. 222 and 393, Jan. T., 1913, by defendants, from order continuing pre-

liminary injunction and final decree of C. P. Lacka-
wanna Co., June T., 1913, No. 1, in Equity, for plaintiffs
on bill in equity for an injunction in case of Joseph
Novicky, William Maculaitis, Anthony Mildazis, An-
thony Zamulis and Baltrus Lepa, for themselves and all
other members of St. Joseph's Lithuanian Catholic
Congregation of the City of Scranton, v. Anthony Krauc-
zunas, John Appn, John Siwaka, Anthony Swirikus,
Charles Cusick, John Jurkis, Adam Grudis, Frank Pa-
lutis, William Antonovicz and Rev. Stanislaus Mickie-
wicz. Before FELL, C. J., BROWN, MESTREZAT, ELKIN
and STEWART, JJ. Affirmed.

Bill in equity for an injunction. Before NEWCOMB, J.
The facts appear in the opinion of the Supreme Court,
and in Krauczunas v. Hoban, 221 Pa. 213; Mazaika v.
Krauczunas, 233 Pa. 138, and Novickas v. Krauczunas,
240 Pa. 248.

The court on final hearing awarded the relief prayed
for. Defendants appealed.

*Errors assigned* were in dismissing exceptions to
various findings of fact and law of the trial judge, and
the order and the decree of the court.

*William J. Hand,* with him *A. A. Vosburg,* for appel-
lants.

*John G. Johnson,* with him *T. P. Hoban* and *John P.
Kelly,* for appellees.

OPINION BY MR. JUSTICE STEWART, April 20, 1914:
This protracted controversy had its inception in the
refusal of the bishop of the diocese within the bounds of
which was included St. Joseph's Lithuanian Catholic
Church, and to whom the title of the property of the
said St. Joseph's Lithuanian Catholic Church had been
conveyed for a special and temporary use, to reconvey

the same to the trustees of the congregation in accordance with the express desire of a majority of the adult members of the congregation at a meeting regularly called, on the ground, as claimed, that under the canons of the Roman Catholic Church the title to all church property is required to be in the name of the bishop of the diocese, to be held by him, not for the particular congregation, but for the church at large. This phase of the controversy was before us in Krauczunas v. Hoban, 221 Pa. 213, which was an appeal from a decree supporting the contention of the bishop, and we there held, reversing the decree of the court below, that under the provisions of the Act of April 26, 1855, P. L. 328, the title to the church property was in the congregation of St. Joseph's Lithuanian Catholic Church regardless of what the canons of the Roman Catholic Church required, and that the property was subject to the control and disposition of the lay members of the congregation, but subject, however, to all the terms and conditions upon which the same may have been bequeathed, devised or conveyed to such unincorporated church. We accordingly reversed the decree of the lower court and directed that a decree be entered requiring that a conveyance be executed by the bishop of the diocese for the premises held by him in trust for St. Joseph's Lithuanian Catholic Congregation of the City of Scranton to the plaintiffs' the regularly chosen trustees of the congregation, in trust for said congregation.

In obedience to this decree Bishop Hoban reconveyed the property to the trustees appointed by the congregation; but simultaneously therewith he issued his episcopal decree placing St. Joseph's Church under an interdict forbidding Catholic worship therein, and forbidding, under pain of ecclesiastical censure, any Catholic to enter the church so long as the interdict remained unrevoked.

Next followed the case of Mazaika v. Krauczunas, 233 Pa. 138, which was an appeal by the trustees of the con-

gregation from a decree of the lower court directing a reconveyance of the church property by the trustees to the bishop pursuant to a resolution adopted by a majority of the congregation at a regularly called meeting. We sustained the appeal, reversing the action of the court below, on the ground that the action taken at the congregational meeting, as disclosed by the resolution adopted—to which we refer without reciting—was a clear attempt to invest the bishop with authority over the congregation's property which the law expressly forbade.

So stood the case—the trustees appointed by the congregation holding the legal title to the property—when certain of the original members of St. Joseph's Lithuanian Catholic Church congregation, who, obeying and observing the episcopal interdict, had refrained from worshipping in St, Joseph's Church and had established a place of worship elsewhere, filed a bill in which they alleged that the trustees of St. Joseph's Lithuanian Catholic Church were permitting certain pastors or ministers not regularly ordained priests of the Catholic Church, in good standing, to officiate and conduct worship therein, and praying that such pastors and ministers be restrained from intermeddling with the temporal or spiritual affairs of the congregation, and that the trustees be restrained from installing in such church any pastor or minister other than a regularly ordained minister of the Catholic Church in good standing. This bill was sustained in the court below and an injunction issued as prayed for. On an appeal, (Novickas v. Krauczunas, 240 Pa. 248) we again reversed the lower court. In the opinion filed in the case we said: "The situation as thus presented is briefly this: the congregation can have no other worship in their church than that prescribed and authorized by the Catholic Church, through a regularly ordained priest in good standing; and yet it can have no such worship so long as the church rests under episcopal interdict; and the inter-

dict will be removed only as the members of the congregation will consent to an alienation of their church property such as the law of the land forbids quite as expressly and explicitly as it does the diversion of church property to other uses than those to which the property was originally dedicated and for which it must be held. Deprived of the right of Catholic worship in their own church by ecclesiastical authority, except upon conditions which that authority has no right to exact, and which the congregation is protected by law in resisting; it may well be questioned whether an abandonment of all religious worship in the church, under the interdict, would not be quite as much a diversion of the property from its original uses, as permitting religious services therein to be conducted by ministers belonging to a different communion. But we decide nothing as to that. What we do decide, and all we decide is, that because the evidence in the case makes it apparent that the purpose of the bill is to accomplish indirectly that which we have repeatedly declared may not be done, the plaintiffs in the bill have no standing to ask equitable relief. If they desire to proceed further, their appeal must be first to the ecclesiastical authority which has forbidden Catholic worship in the church for rescission of the episcopal interdict that inhibits it."

Subsequently, 13th April, 1912, very shortly after the opinion in the case last referred to had been filed, the episcopal interdict forbidding Catholic worship in St. Joseph's Church was formally and publicly withdrawn, thus removing the only obstacle to the resumption of Catholic service in the church. This was followed by a formal and public revocation of a decree excommunicating the trustees because of their resistance to the demands of the bishop with respect to the title to the church property. Thereupon the present bill was filed by plaintiffs, members of St. Joseph's Lithuanian Catholic Church at the time the episcopal interdict was issued, on their own behalf and on behalf of all other members

desiring to join therein, setting forth the above facts, and averring further that the defendants, notwithstanding the removal of every obstacle to the resumption of Catholic worship in the church persistently have refused to permit the regularly appointed pastor of the congregation, and the only one acting under episcopal authority in that relation, to conduct services therein, and have persistently kept and maintained as pastor of the congregation Rev. Stanislaus Mickiewicz, not ordained by or in communion with the Catholic Church, but in communion with and holding allegiance to another distinct ecclesiastical establishment, and praying that an injunction issue restraining the said Rev. Stanislaus Mickiewicz from conducting religious worship or service in said church or in any wise officiating as a member in said church, and enjoining and restraining the other defendants from installing in the church the said Rev. Stanislaus Mickiewicz, or any pastor or minister other than a regularly ordained priest of the Catholic Church in good standing; from establishing any form of worship therein other than that prescribed and authorized by said Catholic Church through a regularly ordained priest, and from diverting said church and property of said congregation to any form of public worship other than that prescribed and authorized by the said Catholic Church. The answer to the bill admits that from its inception the congregation of St. Joseph's Church was in ecclesiastical relation and union with the Roman Catholic Church, and that since the erection of the church building the same has been used by the congregation for public worship according to the rights of the Roman Catholic Church down until by the episcopal interdict Catholic worship therein was forbidden during the continuance in force of the interdict. The contention made by the answer is that "the effect of the said interdict, issued in accordance with the laws of the Roman Catholic Church, and the final refusal of the church authorities in December, 1911, to remove the

same, was to make the said St. Joseph's Lithuanian
Catholic Congregation an independent congregation,
and that the said congregation is not now in any manner
subject to the jurisdiction of the authorities of the
Roman Catholic Church." The court below awarded the
injunction as prayed for and this appeal followed.
While the answer contains much more than we have re-
cited, what we have here given of it states the whole
question. It avers that the episcopal interdict was not
revoked in good faith; but into that question we will
not enter, for the one sufficient reason that whether in
good or bad faith it has effectually removed the one and
only consideration on which we based our recent de-
cision in Novickas v. Krauczunas, supra. The com-
plaint there was that defendants were diverting the
property from its original uses by allowing other wor-
ship therein than that prescribed by the Catholic
Church. We have distinctly asserted that it was not in
the power of the congregation to divert the property
from its original use, but held that the plaintiffs had no
standing to ask equitable relief so long as the episcopal
interdict, which prevented defendants from having
Catholic worship in the church, was in force, and that
their appeal must first be to the ecclesiastical authority
which had forbidden Catholic worship in the church for
rescission of the interdict that prescribed it. Nothing
can be found in any of the opinions of this court touch-
ing this controversy from first to last, which gives even
the slightest warrant for supposing that any departure
was intended from the settled rule that forbids a diver-
sion of property of a religious society from the uses, pur-
poses and trusts to which it may have been lawfully
dedicated. It is a fact, if not expressly admitted too
clear for contradiction, that St. Joseph's Lithuanian
Catholic Church of Scranton was originally dedicated
and devoted to Christian worship according to the rights
and regulations of the Roman Catholic Church, and
that the congregation owning the church property was in

organic union with the Roman Catholic Church subject to its government and discipline.  The contention on part of the defendants is that this relation was severed by episcopal action when the interdict was proclaimed. A clear corollary to this would be that while the congregation may not divert the property, which is its own, from the uses and trusts to which it was originally dedicated, the bishop of the diocese by his episcopal authority may, a deduction to which we cannot agree.  The whole purpose of the interdict was disciplinary, it was a temporary suspension of the right of Catholic worship in the church with a view, as we found, through exercise of ecclesiastical power, to accomplish a purpose on the part of the bishop which we had condemned as against the law of the land.  It was not intended to separate the body of St. Joseph's Congregation from the Roman Catholic Church, or to renounce for the congregation its claim to the church property.  It would have been ineffective had it been otherwise.  So long as the episcopal interdict was in force we declined to interfere, at the instance of those obeying the interdict, to prevent those defying it from having a form of worship in the church nearest akin to that which the interdict forbade; but now, with the interdict removed, the appellees, emboldened perhaps by our indulgence, openly assert their independence of the authority of the Catholic Church, and their purpose to devote the church property to other uses than those to which it was originally devoted, by uniting the church to another wholly separate and distinct church organization.  For this no warrant can be found in any of the decisions of this court.  Such of the complainants as were members of St. Joseph's Congregation when the interdict was issued, remain members notwithstanding they have meanwhile been worshipping in another church, and as members they have an undoubted right to protest against any diversion of the church property to other than its original uses.

The assignments of error are accordingly overruled, and the decrees are affirmed at the cost of the appellants.