## Zernosky *v.* Kluchinsky et al., Appellants.

*Church law—By-laws—Pews—Rental of pews—Consent of priest —Acts of April 26, 1855, P. L. 328, and May 20, 1913, P. L. 242.*

1. The right of the occupancy of a seat or pew in a church exists only in the members of the particular religious body.

2. Religious bodies, in right of church control, may make reasonable by-laws and regulations relative to pews.

3. There is no right of property in a pew; it cannot be taxed; nor, if the church is destroyed, is it a continuing claim on the land. It is a right of a limited character, subject to a certain control, in its origin, by the laws of the ecclesiastical organization.

4. The right is limited to an exclusive occupancy of a certain part of the meeting-house for the purpose of attending upon public worship, during the time the church is open for church purposes.

5. While the ownership of property employed for religious purposes is in the congregation, to be held for the uses with which it is impressed, the ecclesiastical law requiring assent of the priest before pews may be charged for, does not conflict with the laws of the State. Control of property does not thereby pass from the congregation.

6. The property is to be taken and held by the lay members who administer it according to the canons of the church; but, in administering it, both the ecclesiastical authorities and the lay members must act, where the canons of the church provide for definite control in the clergy or other officials.

7. As long as a priest withholds his consent according to the canons of the church, the trustees cannot levy a pew rent under state or ecclesiastical law.

8. The purpose of the Act of May 20, 1913, P. L. 242, was to clarify and explain what was generally understood as being contemplated by the Act of April 26, 1855, P. L. 328.

*Practice, C. P.—Equity—Findings—Additional findings—Agreement as to facts.*

9. Where a chancellor has made findings of fact, he commits no error in subsequently making additional findings based on the uncontradicted evidence, admitted to be so by agreement of the parties.

Argued April 17, 1923. Appeal, No. 7, Jan. T., 1924, by defendants, from decree of C. P. Schuylkill Co., May T., 1922, No. 2, on bill in equity, in case of John Zernosky acting for himself and for the Congregation of St. Joseph's Lithuanian Roman Catholic Church of Mahanoy City v. Adam Kluchinsky et al. claiming to be Trustees of St. Joseph's Lithuanian Roman Catholic Church of Mahanoy City. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill for injunction. Before BECHTEL, P. J.
The opinion of the Supreme Court states the facts.
Decree for plaintiff. Defendants appealed.

*Error assigned,* inter alia, was decree, quoting it.

*Arthur L. Shay,* with him *Roscoe R. Koch* and *Otto E. Farquhar,* for appellants.—The law of this Commonwealth is clear that pew rents arising from the property of the congregation, they, the congregation, have the legal right to levy and assess, and collect such pew rents, whether the priest consents or not: Ryan v. Dunzilla, 239 Pa. 486; Mazaika v. Krauczunas, 229 Pa. 47; Krauczunas v. Hoban, 221 Pa. 213; Brendle v. German Reformed Congregation, 33 Pa. 415; Congregation Shaarai Shomayim v. Moss, 22 Pa. Superior Ct. 356.

The congregation has the legal right to adopt rules, regulations and by-laws: Com. v. Cain, 5 S. & R. 510; Howard v. Church, 52 Pa. Superior Ct. 161; Com. v. Woelper, 3 S. & R. 29; Junker v. Com. ex rel. Fisher, 20 Pa. 484.

A levy of pew rent is not diversion, and that is the only limitation placed upon this congregation by the Act of 1855.

The chancellor had no right, under the equity rules, after final argument and on entering final decree, to make additional findings of fact: Hastings Water Co. v. Boro., 216 Pa. 178; Taylor v. Order of Sparta, 254 Pa. 556.

*Daniel C. Donoghue,* with him *M. J. Ryan, James Fitzpatrick* and *John F. Whalen,* for appellees.—The tenure, use and allotment of pews in a church is an ecclesiastical function.

If the rental of pews is to be regarded as an incident of the control of church property, then, under the present law of this State, that control is subject to the rules, usages, canons, etc., of the religious organization to which the church belongs: Krauczunas v. Hoban, 221 Pa. 213; Mazaika v. Krauczunas, 229 Pa. 47; Mazaika v. Krauczunas, 233 Pa. 138; Ryan v. Dunzilla, 239 Pa. 486.

OPINION BY MR. JUSTICE KEPHART, June 23, 1923:

The principal question involved in this appeal is whether the trustees of St. Joseph's Lithuanian Roman Catholic Church may rent pews without the consent of the priest in charge, and may also prevent those who do not pay pew rent from entering the church to attend services. Other questions are involved, which will be disposed of in the course of the opinion.

At an early date pews were stated to be somewhat "in the nature of heir-looms, as a monument or tombstone in a church, or the coat-armour......there hung up, with......other ensigns of honor......Pews...... may descend by custom immemorial......from the ancestor to the heir": 2 Blackstone's Com. 428, 429. The right to the occupancy of a seat or pew in a church exists only in the members of the particular religious body. Church membership is not a temporal matter; it is entirely ecclesiastical and involves no rights which the civil courts can recognize: St. Casimir's Church, 273 Pa. 494.

Religious societies, in right of church control, may make reasonable by-laws and regulations relative to pews. "Otherwise, if it were free to anybody to purchase pews without restraint, a number of people of another denomination, finding pews low, might purchase them, and become a majority, and then turn the proper congregation out of their own house": Attorney General v. Meeting House, 3 Gray 1, 47; French v. Old South Society, 106 Mass. 479, 487.

There is no right of property in a pew. The "right is limited to an exclusive occupancy of a certain part of the meetinghouse for the purpose of attending upon public worship, during the time the church is open for church purposes": 34 Cyc. 1175; Church v. Wells's Executors, 24 Pa. 249. It is not such privilege as will prevent a sale; it cannot be taxed, and, if the church is destroyed, it is not a continuing claim on the land; in short, it possesses none of the characteristics evolving

from the ownership of property. It is not appurtenant in any form to real estate. It is a right of a limited character, subject to a certain control, in its origin, by the law of the ecclesiastical organization.

This congregation was under the dominion of the Roman Catholic Church. By the enactments of the Fifth Diocesan Synod of Philadelphia, 1855, p. 31, par. 18, it is stated, "To the income of the church pertain collections made in the church on Sundays and Feast days, [and] all the income from the rent of pews." It is undisputed, under church canons, that pews cannot be rented without the consent of the priest.

While the ownership of property employed for religious purposes is in the congregation, to be held for the uses with which it is impressed, the ecclesiastical law, requiring assent of the priest before pews may be charged for, does not conflict with the law of the State. Control of property does not thereby pass from the congregation.

The Act of April 26, 1855, P. L. 328, section 7, requires property conveyed for the use of any church, congregation or religious society for worship to be taken and held subject to the control and disposition of the lay members. The conflicting claims between certain members of a church and its hierarchy has been before this court in Krauczunas v. Hoban, 221 Pa. 213.

And, finally, in Ryan v. Dunzilla, 239 Pa. 486, a case closely resembling this, we said, "Legislation has placed in the lay members of the congregation......the ownership of the church property, and that ownership necessarily carries with it the right to receive and control, for church purposes, the revenues derived from the church properties. The other revenues set forth in the above findings are paid by the members of the congregation for pious uses, and are, therefore, to be turned over to the priest, for the law of the church gives him control of them, and no law of the land takes it from him." This is held to mean control over the property by the lay trustees in the manner indicated by the act.

To fix to a certainty the internal deportment relative to these matters, and in keeping with underlying fundamental legal principles, the Act of May 20, 1913, P. L. 242, was passed; in terms, it holds that, whenever any property, other than funds from plate, Christmas and Easter collections, and annual voluntary contributions, shall be given or conveyed to any church, it shall be held subject to the control and disposition of the lay members of the church, or of such constituted officers or representatives thereof as shall be chosen by a majority of lay members, citizens of Pennsylvania, which control and disposition shall be exercised in accordance with and subject to the rules and regulations, usages, canons, discipline and requirements of the religious body or organization to which such church, congregation, or religious society shall belong. The purpose was to clarify and explain what was generally understood as being contemplated by the Act of 1855. Church property should be controlled in accordance with the rules, regulations and discipline of the particular denomination to which it belongs, limited by the Act of 1855; it makes the lay members, acting in obedience to church law, a necessary part of its control. Absolute dominion of all property is not placed in ecclesiastical authorities, even where their laws so provide. It is to be taken and held by the lay members, who administer it according to the canons of the church; but, in administering it, both must act where the canons of the church provide for definite control in the clergy or other officials.

"The rules of a church organization constitute the law for its government, and the civil courts will, in general, recognize and enforce these, as any other voluntary agreement between the parties": Tuigg v. Treacy, 104 Pa. 493, 497; Furmanski v. Iwanowski, 265 Pa. 1. As long as the priest withholds his consent according to the canons of the church, the trustees cannot levy a pew rent under state or ecclesiastical law. As stated above,

pew rents are not regulated by statute, and must of necessity be controlled by the canons of the church.

The court below was correct in its final disposition of the right of the congregation to charge for the sale of lots in the cemetery, and the right to use the school-house, and we need not add anything to what was stated in the opinion there. The additional findings are based on the uncontradicted evidence, admitted to be so by agreement of the parties. They were necessary, and it was not error for the court below, on exception, to so find.

The decree of the court below is affirmed, at the cost of appellants.