## St. Nicholas Ruthenian Greek Catholic Church v. Kulczycki.

GRAFF, P. J., Sept. 28, 1929.—From the testimony introduced upon the trial of this case, we make the following

### Findings of fact.

1. Rev. Gregory Kulczycki is a pastor of the Ruthenian Greek Catholic Church and became rector or pastor of St. Nicholas Ruthenian Greek Catholic Church of Ford City, Pennsylvania, Feb. 1, 1923.

2. He has been the priest or pastor of said Ford City church from Feb. 1, 1923, continuously to the present time.

3. St. Nicholas Ruthenian Greek Catholic Church of Ford City, Pennsylvania, is an unincorporated association and a component part of the Uniat Greek Catholic Church; the Uniat Greek Catholic Church recognizes the Pope as the supreme head of the church and also recognizes the law of the Roman Catholic Church.

4. Under the canon law of the church, the bishop assigns a priest to a particular parish, and exclusive jurisdiction is placed in him to remove such priest for neglect or violation of his parochial duties.

5. The canon law of the church vests the exclusive right of determining whether a priest is performing his pastoral duties and his clerical obligation in the bishop, and the bishop's jurisdiction and determination of such matters is final and binding upon the priest, the congregation and officers of the congregation, subject only to the right of appeal, if any, to the higher tribunals of the church.

6. When Rev. Gregory C. Kulczycki became priest of the Ford City church, he was notified when he accepted such charge that his salary as priest would be $150 per month.

7. The meaning of said oral agreement relative to salary was that said salary was to be the monthly salary of the priest until changed by mutual agreement or until the priest was legally removed from said parish by proper authority, by his own act or by death.

8. The Ford City church recognized the salary agreement and paid the priest's salary in full at the rate of $150 per month from Feb. 1, 1923, to June 30, 1926, inclusive.

9. The priest was paid from July 1, 1926, to June 30, 1927, by check, the sum of $110 per month. Said checks were accepted by the priest as part payment upon his salary and so endorsed upon the back of the check.

10. The priest received checks in the amount of $80 each, or $83.33 each, from July, 1927, until October, 1928, inclusive, as an attempted payment of his monthly salary. These checks were never cashed or used by the priest, who refused to accept them in payment of his salary.

11. Dissatisfaction arose among certain members of the congregation with the manner in which Rev. Kulczycki performed his pastoral duties, which led to the attempted reduction of his salary in July, 1926, and June, 1927.

12. There is not sufficient evidence to warrant the conclusion that Rev. Gregory C. Kulczycki has willfully injured or destroyed any of the property belonging to the church.

13. A letter was sent to the bishop of the Ruthenian Greek Catholic Church, located at Philadelphia, Pennsylvania, dated July 28, 1927, signed by the officers of the St. Nicholas Church in Ford City, Pennsylvania, requesting the bishop to remove Father Kulczycki and send another priest.

14. During the period from May 25, 1928, to March 26, 1929, Father Ortynsky, the consultor of the bishop at Philadelphia, Pennsylvania, was sent to Ford City to investigate the conditions in the Ford City church. During this period he made five visits to Ford City and attended the semi-annual meeting of the congregation in June, 1928. The said bishop's consultor met with the officers of the church and talked with different members of the congregation. At the semi-annual congregational meeting held in June, 1928, the bishop's consultor transmitted an order from the bishop that the priest should be paid his full salary.

15. The record in writing of a meeting May 25, 1928, at Ford City, Pennsylvania, attended by the bishop's consultor, the president of the church com-

mittee and other officers of the church, shows part of the proceedings at said meeting, as follows:

"Father Ortynsky asked for what reason do they wish a change of the priest? The officers could give no reason. Father Ortynsky said, is your priest a bad man, or does he not fulfill his pastoral duties? And the officers answered, the priest is good, fulfills his priestly obligation. Then Father Ortynsky said, if so, why do you ask the removal of the priest? Answer: Because the people do not want him. Father Ortynsky: Are all the people against Father Kulczycki? The officers: No, only those who do not belong to the church. Father Ortynsky: How is it possible that the parish listens to people who do not belong to the church? Mike Moyta said: Our church is controlled by people who don't belong to the church. The Ruthenians are good people, only a few Salicians make trouble. Father Ortynsky: Why do you let people have any voice in the congregation who do not belong to the church? The officers answered: They do not attend to the church services, but they pay their dues and they attend the meetings and stir up the people."

16. The amount due the priest from the congregation up to and including Aug. 31, 1929, is $4699.35, said amount including all arrearages upon monthly salary from July 1, 1926, to Aug. 31, 1929, inclusive, with interest thereon.

17. The evidence does not disclose any failure or neglect on the part of the priest to fulfill any duty imposed upon him by the laws of the church or the orders of the bishop, and does not show that he has done anything contrary to the laws of the church or the orders of the bishop.

### Discussion.

This case presents an unfortunate situation of a church quarrel, in which the members of the Ruthenian Greek Catholic Church of Ford City are divided in their support of the priest. It is apparent that a considerable number of the congregation are opposed to Father Kulczycki remaining in charge of the parish as their priest. This matter was brought to the attention of the bishiip, who ordered a thorough investigation. This church authority refused to comply with the request of certain members of the congregation that Father Kulczycki be removed as priest, and ordered the congregation to pay him the full amount of his salary. Under the law of the Roman Catholic Church, of which the Ford City church is a part, exclusive jurisdiction is vested in the bishop to appoint or remove priests from particular parishes. In matters relating to a church or other voluntary organization, its members are bound by and required to conform to its laws, and the scope and effect thereof are exclusively determined by its appropriate tribunals selected for that purpose: Furmanski et al. v. Iwanowski et al., 265 Pa. 1.

The civil courts will not review the proceedings of ecclesiastical courts on matters which come within the jurisdiction of the latter: Irvine v. Elliott, 206 Pa. 152.

It is only when ecclesiastical decisions, rules and regulations are in direct opposition to the law, and when rights of property are concerned, that the civil courts will interfere: Krauczunas v. Hoban, 221 Pa. 213.

Some criticism might be advanced as to the manner in which Father Kulczycki performed his pastoral duties, but the final decision in matters of this character rests in the discretion of the bishop.

"It is in the discretion of the bishops of the Roman Catholic Church to decide whether the manner in which a priest performs his official duties, and the nature of his walk and conversation in life are such as to entitle him to support from the church:" Tuigg v. Sheehan, 101 Pa. 363.

The prayer of the petition in this case is, in effect, that Rev. Gregory C. Kulczycki be removed as priest or rector of the St. Nicholas Ruthenian Greek Catholic Church. It is contended by the plaintiff that property rights are involved and, therefore, this court has jurisdiction. We have carefully examined the testimony introduced in this respect, and conclude that it is entirely insufficient to sustain the plaintiff's contention. There is evidence which would indicate a falling away in the membership of the congregation and a consequent reduction in the amount paid by said congregation for the maintenance of the church. This is a natural conclusion from the dissension in the church. There is some evidence to the effect that Rev. Kulczycki did not properly take care of the church property, but it is not sufficient to warrant any conclusion of a willful destruction of said property. The determination of matters concerning the conduct of the priest, which is not contrary to the law of the land, is vested entirely in ecclesiastical authority. This court has no jurisdiction to interfere in such matters. We, therefore, conclude that the bill filed by the plaintiff in this case should be dismissed, and, accordingly, make the following

*Conclusions of law.*

1. Canon law of the church of which St. Nicholas Ruthenian Greek Catholic Church of Ford City, Pennsylvania, is a part, provides that the bishop may remove a priest, rector or pastor from a parish for neglect or violation of his parochial duties, and prescribes the terms, conditions and method of such removal, and places the exclusive jurisdiction in such matters in the bishop.

2. The evidence is entirely insufficient to prove that property rights are involved in this case, and, therefore, this court is without jurisdiction.

3. The canon law vests the exclusive right of determining whether a priest or rector is performing his pastoral duties, and determining whether the priest or rector is fulfilling his obligation, in the bishop, and the bishop's jurisdiction and determination of such matters is final and binding upon the priest, the congregation and the officers of the congregation, subject only to the right of appeal, if any, to the higher tribunals of the church. The power of the bishop in this respect cannot conflict in any manner with the Constitution or laws of the United States or the Constitution or laws of Pennsylvania.

4. The bill in equity must be dismissed.

*Decree nisi.*

And now, Sept. 28, 1929, this matter came on to be heard and was argued by counsel, and it is ordered, adjudged and decreed as follows:

1. That the bill filed in this case be and is hereby dismissed.

2. That the plaintiff pay the costs of this proceeding.

It is further ordered that this decree be entered *nisi*, and the prothonotary is directed to enter it as a final decree unless exceptions are filed within fifteen days.

Upon exceptions filed to the foregoing decree, the following opinion was delivered by the court:

GRAFF, P. J., July 5, 1930.—Within the time specified in the decree *nisi*, exceptions were filed to the findings of fact and conclusions of law as set forth in an opinion heretofore filed. Subsequent thereto, the plaintiff in this case presented a petition to open the decree *nisi* and let it into a further hearing. The petition averred that the plaintiff would prove that that part of the canon law of the Roman Catholic Church which purported to relate to the

appointment and discharge of priests and the government of the congregations does not apply to the St. Nicholas Ruthenian Greek Catholic Church. A hearing was had upon said petition, and the matter now comes before us upon the evidence introduced and the exceptions filed to findings of fact and conclusions of law.

In the opinion heretofore filed it was held that the canon law of the Roman Catholic Church governs the Ruthenian Greek Catholic Church, which is a component part of the Catholic Church under the Uniat Agreement. It was further held that the bishops of the Greek Catholic Church have complete control over the matter of placing and removing priests, and that they have the power of deciding whether the priest is properly performing his duties, in accordance with the laws of the church. The plaintiff contends that the power of hiring and discharging priests in the Greek Catholic Church is vested in the congregation, and not in the bishops. In the *Codex Iuris Canonici*, which is the only approved edition of the canon law of the Roman Catholic Church, the first canon is as follows:

"Although in the code of the canon law the discipline of the Oriental Church also is often referred to, nevertheless the code itself refers to the Latin Church only and does not bind the Oriental Church, unless it deals with those matters which from the nature itself of the thing also affect the Oriental Church."

It is to be noted that the Oriental Church is not excepted from the general application of the canon law where that law deals with those matters which naturally affect the Oriental Church. Canon 218 and canon 219 define the power of the Pope as being supreme and as having full power and jurisdiction over the Universal Church, both in things which pertain to faith and morals and also in those things which pertain to the discipline and rule of the church scattered throughout the entire world. The Pope appoints the bishops of the Oriental Church as he appoints the bishops of the Latin branch of the church and delegates to them full and ordinary power. The general government of the Catholic Church is a vital part of Catholic philosophy and teaching. Both the Latin and Oriental branches of the church recognize the Pope as their head. The general government of the Oriental Church regulates the existence of the church itself. The canon law of the Roman Catholic Church provides for the government and discipline of the Catholic Church. Such matters, from the nature of themselves, must affect the Oriental Church, and canon 1 does not except the Oriental Church from the general application of the code. However, the decrees of 1914 and 1929, regulating the government of the Oriental Church, provide as follows:

"All rectors of the Græco-Ruthenian parishes and missions in the United States are removable at the will of the bishops of the Græco-Ruthenian rite, but they cannot be removed without grave and just cause. And, further, the bishops shall provide for the living of the priest by assigning a salary to the same, to be fixed according to the proportion conforming with the mass or total amount of all of the receipts of the church."

These decrees are declaratory of the canon law. Under them the bishop has the power to appoint and discharge priests and to fix their salary. We conclude that the power of appointing and discharging priests, as provided by the canon law of the Roman Catholic Church, has complete application to the appointment and discharge of the priest employed by the Greek Catholic Church of Ford City.

The salary contract or agreement was entered into between the priest, Rev. Kulczycki, and the congregation and not actually fixed by the bishop. The

plaintiff contends that since a contract was entered into in such manner, the congregation had the right to terminate the same. It is not contended that the salary agreement is void for the reason that the bishop did not fix it. Under the general canon law and the Decrees of 1914 and 1929, the bishop determines the amount of salary to be paid to a particular priest, basing the amount thereof upon the receipts of the particular church. This provision is for the benefit of the priests and enacted to provide for his living. If he sees fit, he may waive the benefit of its provisions. However, in the present case the bishop in effect fixed the amount of the salary when he ordered the congregation to pay the same after a full investigation. By such an order he ratified, confirmed and adopted the salary as fixed by the congregation and the priest with the same effect as if he had originally determined the amount. The bill in equity originally filed in this case in effect prayed for the removal of Rev. Kulczycki as priest of the Ford City congregation. It was averred that property rights were involved, in that the priest was destroying the church property. For reasons fully discussed in the opinion heretofore filed, this contention is without merit. We conclude that the petition filed should be dismissed.

The plaintiff has filed exceptions to the following findings of fact and conclusions of law:

The plaintiff excepts to finding of fact No. 4, which is as follows:

"Under the canon law of the church, the bishop assigns a priest to a particular parish, and exclusive jurisdiction is placed in him to remove such priest for neglect or violation of his parochial duties."

This finding of fact has been hereinbefore fully discussed, and the exception is without merit.

The plaintiff excepts to finding of fact No. 5, which is as follows:

"The canon law of the church vests the exclusive right of determining whether a priest is performing his pastoral duties and his clerical obligations in the bishop, and the bishop's jurisdiction and determination of such matters is final and binding upon the priest, the congregation and officers of the congregation, subject only to the right of appeal, if any, to the higher tribunals of the church."

This finding of fact is fully sustained by the evidence.

The plaintiff excepts to finding of fact No. 7, which is as follows:

"The meaning of said oral agreement relative to salary was that said salary was to be the monthly salary of the priest until changed by mutual agreement or until the priest was legally removed from said parish by proper authority, by his own act or by death."

The testimony of Rev. Kulczycki and the canon law of the church justify this finding of fact.

The plaintiff excepts to finding of fact No. 9, which is as follows:

"The priest was paid from July 1, 1926, to June 30, 1927, by check, the sum of $110 per month. Said checks were accepted by the priest as part payment upon his salary and so endorsed upon the back of the check."

The testimony of Rev. Kulczycki and the checks introduced in evidence justify this finding of fact.

The plaintiff excepts to finding of fact No. 11, which is as follows:

"Dissatisfaction arose among certain members of the congregation with the manner in which Rev. Kulczycki performed his pastoral duties, which led to the attempted reduction of his salary in July, 1926, and June, 1927."

The testimony of a number of the members of the Ford City church justifies this finding of fact.

The plaintiff excepts to finding of fact No. 12, which is as follows:

"There is not sufficient evidence to warrant the conclusion that Rev. Gregory C. Kulczycki has willfully injured or destroyed any of the property belonging to the church."

The evidence fully sustains this finding of fact.

The plaintiff excepts to finding of fact No. 14, which is as follows:

"During the period from May 25, 1928, to March 26, 1929, Father Ortynsky, the consultor of the bishop at Philadelphia, Pennsylvania, was sent to Ford City to investigate the conditions in the Ford City church. During this period he made five visits to Ford City and attended the semi-annual meeting of the congregation in June, 1928. The said bishop's consultor met with the officers of the church and talked with different members of the congregation. At the semi-annual congregational meeting held in June, 1928, the bishop's consultor transmitted an order from the bishop that the priest should be paid his full salary."

The evidence to sustain this finding of fact is practically undisputed.

The plaintiff excepts to finding of fact No. 16, which is as follows:

"The amount due the priest from the congregation, up to and including Aug. 31, 1929, is $4699.35, said amount including all arrearages upon monthly salary from July 1, 1926, to Aug. 31, 1929, inclusive, with interest thereon."

The evidence justified this finding of fact.

The plaintiff excepts to finding of fact No. 17, which is as follows:

"The evidence does not disclose any failure or neglect on the part of the priest to fulfill any duty imposed upon him by the laws of the church or the orders of the bishop, and does not show that he has done anything contrary to the laws of the church or the orders of the bishop."

For reasons hereinbefore discussed, this finding of fact is warranted.

The plaintiff excepts to conclusion of law No. 1, which is as follows:

"Canon law of the church of which St. Nicholas Ruthenian Greek Catholic Church of Ford City, Pennsylvania, is a part, provides that the bishop may remove a priest, rector or pastor from a parish for neglect or violation of his parochial duties, and prescribes the terms, conditions and method of such removal, and places the exclusive jurisdiction in such matters in the bishop."

For the reasons hereinbefore discussed, the exceptions to this conclusion of law is without merit.

The plaintiff excepts to conclusion of law No. 2, which is as follows:

"The evidence is entirely insufficient to prove that property rights are involved in this case, and, therefore, this court is without jurisdiction."

For reasons heretofore stated in an opinion filed, this exception is without merit.

The plaintiff excepts to conclusion of law No. 3, which is as follows:

"The canon law vests the exclusive right of determining whether a priest or rector is performing his pastoral duties, and determining whether the priest or rector is fulfilling his obligation, in the bishop, and the bishop's jurisdiction and determination of such matters is final and binding upon the priest, the congregation and the officers of the congregation, subject only to the right of appeal, if any, to the higher tribunals of the church. The power of the bishop in this respect cannot conflict in any manner with the Constitution or laws of the United States or the Constitution or laws of Pennsylvania."

For the reasons hereinbefore discussed, this exception is without merit.

254

*Order.*

And now, July 5, 1930, this matter came on to be heard, and was argued by counsel, and it is ordered, adjudged and decreed as follows:

1. That the exceptions to findings of fact and conclusions of law be and are hereby overruled and dismissed.

2. That the petition to open the decree *nisi* be and is hereby dismissed.

3. That the bill filed in this case be and is hereby dismissed.

4. That the plaintiff pay the costs of this proceeding.

From Harry C. Golden, Kittanning, Pa.