## Krauczunas, Appellant, v. Hoban.

*Trusts and trustees—Adverse holding—Executed use—Religious congregation—Title to property.*

It results from the act giving to religious societies legal capacity to hold real estate, that a conveyance of real estate to a trustee for the use of a particular congregation, constitutes an executed legal estate in the congregation itself, to be used by it for such purposes as the law allows.

In such a case the congregation may at a subsequent duly convened meeting direct the trustee, to whom the property had been conveyed, to execute a deed of conveyance to other persons named as trustees, and the trustee cannot set up as a ground for refusing to execute such a deed that he is in fact the bishop of the Roman Catholic Church, of which the congregation in question is a part, and that under the rules, discipline and usages of such church he holds the title to the property in question.

A trustee while occupying a place of trust and confidence cannot be heard to set up an adverse holding.

Ecclesiastical rules and regulations, except as they are aided by legal conveyance, are ineffectual to divest any owner of his property.

The Act of April 26, 1855, P. L. 328, confirms in unequivocal terms to every religious society, incorporated or unincorporated, the absolute ownership of its property subject only to the condition that it shall not divert it from the uses and purposes and trusts to which it may have been lawfully dedicated.

Argued Feb. 24, 1908. Appeal, No. 368, Jan. T., 1907, by plaintiffs, from decree of C. P. Lackawanna Co., Jan. T., 1907, No. 2, dismissing bill in equity in case of Andrew Krauczunas et al. v. Michael J. Hoban. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Bill in equity to compel a conveyance of real estate.

EDWARDS, P. J., found the facts to be as follows:

1. The plaintiffs, ten in number, bring suit for themselves and their associates, who constitute an unincorporated reli-

gious association, named the St. Joseph's Lithuanian Catholic Congregation. The defendant is the Roman Catholic Bishop of the Scranton diocese.

2. The said congregation is composed mainly of Lithuanians and was organized as a church in the year 1892. It was organized as a Roman Catholic church, and is under the ecclesiastical jurisdiction of the defendant as bishop of the Scranton diocese. It has been since its organization a Roman Catholic church.

3. In 1893 the said congregation purchased, under contract, a lot of land in the city of Scranton, for the purpose of erecting thereon a church building. The title to this land was taken in the names of Vincent Blazys, W. Yususe, Mike Bernotas, George Mitchell and Joseph Tamalinnas. These persons were acting for the congregation, two of them being officers thereof. Afterwards, in 1896, the deed for the property was made to the same persons, naming them as " trustees," but not giving the name of the congregation for which they were trustees.

4. Soon after the foregoing deed was obtained, an attempt was made to place the title to the property in the name of the then bishop of the Scranton diocese, Bishop O'Hara, the predecessor of the defendant in said office. On March 13, 1896, a deed was made to the " Providence Lithuanian Catholic Congregation." This deed was signed by the five men named in the foregoing finding. Although named as " trustees " in the deed they signed as individuals. In September, 1896, the " Providence Lithuanian Catholic Congregation " deeded the property to Bishop O'Hara, in trust for the congregation. This deed is signed by two persons, named as " president " and " secretary," without designation of the name of the congregation. It is apparent that the purpose of these conveyances was to take the title to the church property out of the individuals named in the third finding, and to place it in the bishop of the diocese in trust for the congregation. This attempted transfer was a somewhat crude effort, judged by the technical rules governing conveyancing. The first deed, January 17, 1896, was to the five persons named, as " trustees " merely ; the second deed, March 13, 1896, although purporting to be made by " trustees," is signed by the grantors as

individuals and the name of the congregation is incorrectly given; the third deed, September 12, 1896, is improperly executed, and this latter deed does not show a resolution of the congregation authorizing the transfer to the bishop.

5. Between the years 1889 and 1901 the church building was erected. The congregation went into debt, and in 1901 it became necessary to secure a loan of $10,000. Application for the loan was made to an attorney, and, while investigating the title, he discovered the defects in the deed above referred to. The consequence was that a meeting of the congregation was called for February 13, 1901. It is as to this meeting that we find the first substantial dispute in the testimony, the plaintiffs claiming that there was present only a small minority of the congregation, and that the action taken at the meeting was therefore void. As to the number present at this meeting, and as to what transpired therein, a large number of witnesses have testified on each side. Except as to the number present at the meeting the testimony of plaintiffs' witnesses is vague and very unsatisfactory. The only clear and definite testimony comes from defendant's witnesses. On one side it is claimed that the number present at the meeting was from 100 to 200; on the other side the number is given at from 400 to 700. We are of the opinion that the defendant's witnesses are more nearly correct than the other witnesses, and we find as a fact that the congregation was represented at said meeting by a majority of the members. The matter discussed was the transfer of the title to the church property to Bishop Hoban, the successor of Bishop O'Hara. It was explained that this was the only way by which the loan could be secured. A resolution was adopted, with substantial unanimity, authorizing and directing the transfer of the title to the church property to Bishop Hoban, the defendant in this case, in trust for the St. Joseph's Lithuanian Catholic Congregation.

6. The action taken at said meeting contemplated the formal transfer of the title to Bishop Hoban from the old trustees, the five men named in our third finding of facts, thus ignoring the attempted transfer from them to the congregation and from the congregation to Bishop O'Hara, as shown by the deeds already referred to. The attorney considered these

deeds so imperfect as to cast a serious doubt on the validity of the transfers. He therefore advised the action as taken by the meeting of the congregation. Subsequently, the old trustees refused to make the transfer, and then another meeting was called and held, the result of which was the authorization of legal proceedings to compel the five old trustees to convey the church property to Bishop Hoban, in accordance with the resolution adopted at the previous meeting.

7. The next step was the filing of a bill in equity, in which George Smith and others for themselves and associates, constituting the St. Joseph's Lithuanian Catholic Congregation, were plaintiffs, and Vincent Blazys et al., the five old trustees, were defendants. The purpose of the bill was to have a trust declared in the defendants as to the church property for the benefit of the said congregation, and to secure a conveyance of the property to Bishop Hoban. The bill was taken pro confesso and a final decree was entered (1) declaring a trust in the defendants as to the property aforesaid; (2) ordering the defendants to execute a declaration of trust within ten days; and (3) directing the defendants to convey the church property to Bishop Hoban in trust for the said congregation. Whatever criticism might be made as to the regularity of these equity proceedings they finally resulted in a deed from the defendants—the old trustees, as trustees, to the Right Rev. Michael John Hoban, trustee for the St. Joseph Lithuanian Catholic Congregation. Therefore, in August, 1901, the title to the church property was securely vested in Bishop Hoban in trust for the congregation.

8. In the year 1906 it appears from the evidence that considerable dissatisfaction existed among the members of St. Joseph's congregation. They were not satisfied with their priest, and many of them claim that the congregation had no knowledge that the title to their property was in Bishop Hoban, as trustee. At first it seems the objections were more on account of the priest than because of the bishop's connection with the property ; but whatever may have been the cause of the irritation, the outcome was that on July 20, 1906, a meeting of the congregation was held to take action relative to the transfer of the church property from Bishop Hoban to other trustees selected by the congregation. This meeting was called

by means of notices in newspapers and by printed slips or bills handed to the members of the congregation. There is no evidence as to the manner in which meetings of the congregation to transact its business was usually called. The meeting of February 13, 1901, was called by the priest from the altar; but we were not referred to any rule, by-law or custom governing the calling of meetings. We, therefore, cannot say that the meeting of July 20, 1906, was irregularly called. There is some question as to the number present at this meeting; but we have no difficulty in finding as a fact, and we do so find, that the resolution adopted at said meeting was passed "by a vote of more than a majority of the adult members of the congregation." The resolution provided that Andrew Krauczunas and others, ten in number, "the present trustees," be chosen as trustees "to hold the title to all the property belonging to this society." These trustees are directed "to take such action, in law, equity, or otherwise, as may be necessary to secure the conveyance to them as trustees for said society of the legal title to any and all property now held by any other person or persons as trustee or trustees for this society." The resolution also provides for the incorporation of the society and the subsequent conveyance of the property to the incorporated society. Another meeting was held in October, 1906, in which the said trustees, the plaintiffs named in the present case, were instructed to bring legal proceedings to secure the conveyance of the church property from the defendant, he having refused to make the transfer when requested to do so.

9. The canons of the Roman Catholic church provide and require that the title to the property of a Roman Catholic congregation, which is under the jurisdiction of the Roman Catholic bishop of the diocese in which the congregation has its place of worship, must be in the "ordinary," or, in the present case, in the bishop of the diocese.

The above specific findings cover all the material facts established by the evidence in this case. Briefly recapitulated the facts are:

(a) The St. Joseph's Congregation is a Roman Catholic church, and is under the jurisdiction of the defendant as bishop of Scranton.

(b) By action of the congregation and by legal proceedings and deed, the title to the church property was transferred in 1901 to Bishop Hoban in trust for the congregation.

(c) A large majority of the congregation in 1906 passed a resolution to secure the transfer of the title from Bishop Hoban to ten trustees, plaintiffs named in the present case.

(d) The bishop refused to make the transfer, claiming the right, under the laws of the Roman Catholic church, to hold the title to said property in trust for the congregation.

The court entered a decree dismissing the bill.

*Error assigned* amongst others was decree dismissing the bill.

*A. A. Vosburg*, with him *W. J. Hand*, for appellants.—The undisputed evidence showing that the property in question was purchased by the congregation through its own chosen trustees and the title taken in them, and that the only title acquired by the defendant was through the alleged action and choice of the congregation as appears by the terms of the deed to him, and it being undisputed that " a large majority " of the congregation have regularly chosen the plaintiffs as trustees to hold the title to its property, the plaintiffs were entitled to the relief prayed for : Brown v. Griffin, 14 W. N. C. 358 ; St. Mary's Church, 7 S. & R. 517.

*T. P. Hoban*, with him *Robert J. Murray*, for appellee.— In Pennsylvania a bishop may hold title to real and personal property as trustee for his congregation or diocese under the rules and disciplinary regulations of the Catholic church.

Where the laws of a church require the title to church property to be vested in the bishop of the diocese, the courts of Pennsylvania have uniformly recognized and enforced such laws : See Dochkus v. Lithuanian Beneficial Society, 206 Pa. 25 ; Tuigg v. Treacy, 104 Pa. 493 ; Est. of Rt. Rev. M. Domenec, 28 Pitts. L. J. 229 ; Donaldson's Estate, 11 Pa. C. C. Rep. 311 ; McGinnis v. Watson, 41 Pa. 9 ; Roshi's Appeal, 69 Pa. 462; Krecker v. Shirey, 163 Pa. 534; Schlichter v. Keiter, 156 Pa. 119 ; Greek Catholic Church v. Orthodox Greek Church, 195 Pa. 425.

OPINION BY MR. JUSTICE STEWART, May 11, 1908:

The findings of fact by the court below are entirely adequate to an intelligent understanding of the case, and we see no reason to question the correctness of any of them. The plaintiffs and those associated with them, and whom they here represent, constitute the St. Joseph's Lithuanian Catholic Congregation of the city of Scranton, an unincorporated religious association organized in 1892, and which is under the ecclesiastical jurisdiction of the defendant as Bishop of the Scranton diocese (finding No. 1). In 1893 the congregation contracted for the purchase of a lot of ground in the city of Scranton for the purpose of erecting thereon a church building. In 1896, the purchase having been completed, the title to the lot was taken in the names of certain members of the association simply as trustees, without any designation or description of the beneficiaries. In regard to the character of their holding there is no dispute. Several ineffectual attempts —ineffectual because of defective conveyances, and apparent want of authority in the grantors—were shortly thereafter made to place the title to the property in the then presiding bishop of the diocese as trustee. The result of these efforts, through diverse outstanding questionable conveyances, was a clouded and disputed title, which embarrassed the congregation when in 1901, a large debt having been incurred in the building of the church, it became necessary to negotiate a loan on the security of the improved lot, to the amount of $10,000. The attorney representing the congregation reported that the condition of the title prevented the securing of the loan, and advised that a deed be obtained from the original trustees, ignoring the subsequent attempted conveyance to the bishop of the diocese, to someone in trust for the congregation. Thereupon at a called meeting of the congregation, February 13, 1901, at which there were present a majority of the members of the congregation, a resolution was adopted with substantial unanimity, authorizing and directing the transfer of the title to the property to the defendant in this case, for the St. Joseph's Lithuanian Catholic Congregation. The court finds that at this meeting the matter discussed was the transfer of the title to the defendant, and that it was there explained that this was the only way in which

the contemplated loan could be secured. The original trustees declining to transfer the title as directed by the resolution, proceedings were begun by bill against them to have a trust declared as to the church property and compel a conveyance from them to the defendant. A decree followed, pro confesso, and this was followed by a regular conveyance from the original grantees to "The Right Reverend Michael Hoban, trustee of the St. Joseph Lithuanian Catholic Congregation of the city of Scranton," etc., in accordance with the decree. So matters stood, with much discontent in the congregation, however, arising from several causes, until July 20, 1906, a meeting of the congregation was held at which a majority of the adult members were present, to take action relative to the transfer of the title from the defendant to other trustees to be selected by the congregation. The court declined to find that this meeting was irregularly called. It had been called by a priest from the altar, by means of notices in newspapers, and by printed slips or bills handed to the members. There being no evidence as to any other or different requirements for the calling of the congregational meeting to transact business, it may very safely be assumed that all essentials were complied with, and that the meeting was regularly called for the purpose indicated. Its regularity is not questioned. At this meeting, the plaintiffs in this case below, ten in number, were chosen trustees "to hold the title to all the property belonging to this society," and they were directed by resolution "to take such action, in law, equity or otherwise, as may be necessary to secure the conveyance to them as trustees for said society of the legal title to any and all property now held by any other person or persons as trustee or trustees for the society." The defendant having declined to convey to the trustees named, at a subsequent meeting held in October following, the plaintiffs were directed to begin legal proceedings to compel a conveyance. In accordance with this resolution the present bill was filed. The answer filed controverts many of the statements contained in the bill, but we take the facts to be as found by the court; their correctness is not challenged by any exceptions on the part of the defendant. While the answer distinctly avers that the defendant became invested with the legal title to the prop-

erty through the conveyance from the former trustees, made pursuant to the decree of the court based on the action of the congregation at the meeting held February 13, 1901, it is made apparent by what is set out in other parts of the answer, as well as by the conclusions of the court in response to points submitted on behalf of the defendant, that resistance to the plaintiffs' demands is based on matters wholly distinct from anything expressed in the conveyance, or which could result from such conveyance between ordinary parties where ecclesiastical considerations were not involved. Before referring to these it may be as well to determine just what was the legal effect of this conveyance to the defendant, as trustee, judged by the proceedings which led up to it, and by what is expressed in terms. That the congregation was acting within the scope of its powers, in directing the conveyance, cannot be questioned; certainly it will not be by the defendant who holds the title derived thereunder, and makes no disclaimer. The property conveyed was the property of the congregation. While the legal title was in the former trustees, the entire beneficial interest, equivalent in equity to a corresponding legal estate, was in the congregation. The latter's dominion over it extended even to the right of alienation under proper conditions, not qualified by any right in the trustees. Speaking of a conveyance similar in all respects to that which vested the title here in the original trustees, this court said in Brendle et al. v. The German Reformed Congregation et al., 33 Pa. 415, "Now, it is very plain, that hereby a complete fee-simple title in regular form passed from Wistar to the trustees, and that an equal title, in the form usually adopted," (a simple declaration by the trustees of their trust), "for conveying land to congregations under the act of 1731, passed from the trustees to the congregation. That act gave to religious societies legal capacity to hold, and therefore the conveyance to their trustees constituted an executed legal estate in the congregation itself. The use of the medium of trustees was mere matter of form. . . . Such trustees seldom, if ever, convey to successors; but title in their name is treated as the title of the congregation, to be used by the congregation at their discretion, for such purposes as the law allows." A trust so limited is as dry and passive as any that can be conceived. It gives to the

trustee neither interest in the estate nor power to control it or direct its management in any way ; it creates no duty for the trustee to perform and leaves nothing to his discretion ; he is simply the passive, silent depository of the legal title and nothing more. This was the situation when the title to this property vested in defendant's predecessors, the former trustees. In what respect was it changed by the transfer of the title to the defendant? Did the congregational meeting of July 20, 1906, which ordered such transfer, direct that the new trustees should be invested with other or greater interest in the property, or power over it, than the former trustees had? Nothing of the kind is suggested ; but on the contrary, it conclusively appears from the resolutions themselves and from the findings of the court, that the sole purpose in ordering the transfer was to clear the legal title of doubts, and matters which had interfered with the negotiation of the loan for congregational purposes, and that nothing beyond was contemplated. The resolution adopted at the meeting was to the effect that the former trustees be requested to make and execute a declaration of trust that they had no title or interest of their own in the property, " and that they execute and deliver a deed for the premises to Bishop M. J. Hoban, as trustee for our said church, which said deed shall be made in proper form so as to convey the interest which they hold in said church as trustees for the said St. Joseph's Lithuanian Catholic Congregation." There can be but one conclusion with respect to the matter we are now considering—the defendant is simply a depository of the legal title to the property ; he holds just as his predecessors in title did, without interest and without power ; the entire beneficial interest is in the congregation to be used by it at its discretion, for such purposes as the law allows. If the congregation in 1901 had the power to change the trustees of its title, as unquestionably it had, why had it not the same power in 1906? No reason can be suggested why it should be held to have exhausted its power with the first change. It is only reasonable that the right to exercise such power when it sees fit should abide with the congregation as the owner of the property. Any other result would be inconsistent with the full ownership with which it is invested. No one without interest can be heard to complain of such ex-

ercise, and here the only interested party is the congregation. Without more in the case than has so far appeared, the right unquestionably rests with the plaintiffs, and they would be entitled to a decree in their favor.

We turn now to the actual defense set up. Without disclaiming the title to the property conveyed to him by the former trustees, in accordance with the action taken by the congregation, the defendant in the sixth paragraph of his answer declares, "that he holds title thereto as trustee of said corporation in accordance with the laws, rules, discipline and usages of the Catholic diocese of Scranton;" and in the ninth paragraph he asserts: "That he holds the title to the property in question and other property of said congregation as trustee for St. Joseph's Lithuanian Catholic Congregation in accordance with the rules, discipline and usages of the Catholic Church in the diocese of Scranton." What is meant by this, becomes apparent in the light of the findings and conclusions of the court in response to requests submitted on behalf of the defendant. The ninth finding of the court is as follows: "The canons of the Roman Catholic Church provide and require that the title to the property of the Roman Catholic Congregation which is under the jurisdiction of the Roman Catholic Bishop of the diocese in which the congregation has its place of worship, must be in the ordinary, or, in the present case, in the bishop of the diocese." The first of the court's conclusions of law is as follows: "If a congregation is formed for the purposes of religious worship according to the faith and rites of the Catholic Church, has accepted the pastor assigned to it by the bishop of the diocese, has placed itself under the authority of the bishop and submitted itself to his authority in all ecclesiatical matters, the title to its property must be taken and held as provided by the canons of the Catholic Church. The property acquired by the congregation under such circumstances is the property of the church and is subject to its control and must be held in the manner directed by its laws. A congregation cannot divorce itself from the church or form an independent organization and retain the ownership of the property." The second conclusion is as follows: "That the title to the real estate described in plaintiffs' bill is properly and legally vested in the defendant, Right Rev. Michael J.

Hoban, Bishop of Scranton, as trustee for St. Joseph's Lithuanian Catholic Congregation, in accordance with the laws and usages of the Catholic Church."

It will be seen from this that what was a controversy over an unimportant result—the right to substitute one dry, passive trustee of a legal title for another—was made to involve a question of ownership of property. It is to be observed, first, in regard to the defense here set up, that it is in effect the assertion by a trustee of a right and title adverse to his cestui que trust. The conclusion of the court, in affirmation of the position taken by the defendant, is that the property acquired by the congregation is the property of the church with which the congregation is affiliated, subject to its control, and must be held in the manner directed by its laws. This is a distinct and unequivocal denial of ownership in the congregation. We have seen that under the law the effect of the original conveyance was to vest the ownership of the property in the congregation. By no act on the part of the congregation, recognized by the law as sufficient for the transfer of its ownership, did it ever divest itself of such ownership. More than that, there is not a particle of evidence that any such divestiture was ever contemplated. The deed to the defendant is in trust for the congregation ; and it is to him, not as the ecclesiastical head of the diocese for the use of the church, but to him in his individual character, " Right Reverend Michael Hoban, trustee of St. Joseph's Lithuanian Catholic Congregation of the city of Scranton." It is declared in the habendum that he is to hold it " in trust nevertheless and at all times for St. Joseph's Lithuanian Catholic Congregation aforesaid." So long, therefore, as defendant claims to hold in any degree under this conveyance, he cannot be heard to challenge the ownership of the congregation whose trustee he is therein declared to be. It is fundamental that a trustee, while occupying a place of trust and confidence, cannot be heard to set up an adverse holding : Perry on Trusts, sec. 863, and the authorities there cited. While it is not for us to inquire into the reasons for the action of the congregation in directing a conveyance to other trustees, we have no hesitation in saying that, if none other existed than the fact that the trustee in office denied the ownership of the party at whose pleasure and for whose use he was made trus-

tee, this of itself would be sufficient to justify the action taken.
Again, it is nowhere made to appear how, or by what proceed-
ing, the church, as distinguished from the congregation, became
invested with the ownership of this property.   Conveyance to
the church is not pretended; nor is forfeiture on the part of
the congregation.   Nothing is asserted in this connection but
ecclesiastical rules and regulations, which, except as they are
aided by legal conveyance, are ineffectual to divest any owner
of his property.   But more than this the position taken by de-
fendant and sustained by the court, is in direct opposition to
the law, whose supremacy, over all ecclesiastical rules and regu-
lations, when rights of property are concerned, is not to be ques-
tioned.   The Act of April 26, 1855, P. L. 328, sec. 7, provides
that "whensoever any property, real or personal, shall here-
after be bequeathed, devised or conveyed to any ecclesiastical
corporation, bishop, ecclesiastic or other person, for the use of
any church, congregation, or religious society, for religious
worship or sepulture, or the maintenance of either, the same
shall not be otherwise taken and held, or inure, than subject
to the control and disposition of the lay members of such
church, congregation, or religious society, or such constituted
officers or representatives thereof," etc.   The same act pro-
vides: "That it shall be lawful for the majority of the male
members, of lawful age, of any unincorporated church, con-
gregation, or religious society to choose for their trustee or
trustees any other person or persons than a layman; and
whenever not previously declared, to declare the manner in
which the title to their trust control shall be held and con-
veyed, subject, however, to all terms and conditions upon which
the same may have been bequeathed, devised or conveyed to
such unincorporated church, congregation or religious society,
and upon due proof of such consent, any court having juris-
diction over trusts may direct the legal title to be conveyed
accordingly."

This legislation in most unequivocal terms confirms to every
religious society, incorporated or unincorporated, the absolute
ownership of its property, subject only to the condition that
it shall not divert it from the uses and purposes and trusts to
which it may have been lawfully dedicated.   It expresses the
settled policy of the state with respect to the tenure of prop-

erty held by religious societies, that has been steadily observed without question for now more than half a century. Its restraining provisions positively forbid the setting up under such title as is held by this defendant, any use other than that which resides in the congregation.

It is to be remarked that we are dealing only with property rights. Such rights can be acquired only by, and in conformity with, the law of the land. When so acquired, the law which allows them must be equal to their protection and security. To conclude—the entire beneficial ownership in the property here sought to be involved is, and has been from the beginning, in the St. Joseph's Lithuanian Catholic Congregation of the city of Scranton; the defendant is trustee of the legal title to the property for the exclusive use of said congregation, without any interest therein or any right or power to control its use or disposition; the congregation has the right to substitute other trustees in his stead, and, having done so by a majority vote at a regularly called meeting for that purpose, it is entitled to the process of the court to compel a conveyance from the defendant to the trustee of its own selection. The plaintiffs requested a finding to the effect that under all the evidence the plaintiffs were entitled to a decree directing the defendant to convey the property in question to the ten trustees named in the bill and chosen by the congregation. This was refused, and its refusal is the basis of the thirteenth assignment of error. The assignment is sustained. The decree is reversed at the costs of the defendant; and it is now ordered, adjudged and decreed that plaintiffs' bill be reinstated, and it is ordered that a decree be entered in the court below, in accordance with this opinion, directing a conveyance from the defendant of the premises held by him in trust for St. Joseph's Lithuanian Catholic Congregation of the city of Scranton to the plaintiffs, in trust for St. Joseph's Lithuanian Catholic Congregation of the city of Scranton, within such time as to the court below may seem reasonable and proper.