## St. Mary's Immaculate Conception Greek Catholic Church's Petition.

308

Argued February 4, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*C. F. Smith,* of *Smith & Paff,* for appellant.—The very prohibition in the by-laws of the congregation which is violated by the decree to mortgage without the consent

of the bishop, was placed in the by-laws for the benefit or interest of the trust: Burton's App., 57 Pa. 213.

Corporate property of a religious corporation cannot be mortgaged on proceedings instituted by the members of a schismatic congregation who have erected a schismatic corporation and congregation, not owning the property at the time the resolution of such congregation is passed nor members or officers of the corporation whose property is to be mortgaged and not having any interest therein: Kicinko v. Petruska 259 Pa. 1; Beck v. Dech, 231 Pa. 636; St. Joseph's L. R. C. Church's Petition, 273 Pa. 486; Sharp's Petition, 6 Phila. 153.

*D. M. Garrahan,* for appellee.—The court had jurisdiction under the Price Act to decree the mortgaging of the premises.

The congregation is the true owner of the property, while the corporation holds but the bare legal title: as a religious body, it falls within the kindly care of the state: Burton's App. 57 Pa. 213; Novickas v. Krauczunas, 240 Pa. 248; St. Joseph's L. R. C. Church's Petition, 273 Pa. 486.

OPINION BY MR. JUSTICE SCHAFFER, April 15, 1929:

This is one of those unfortunate church disputes which wisdom would dictate should have been adjusted without a resort to litigation.

On petition of those claiming to be members and officers of St. Mary's Immaculate Conception Greek Catholic Church of Allentown, the court below empowered the trustees of the church, naming them, to execute a mortgage in the sum of $21,500 for the purpose of discharging liens upon the church property and paying for repairs and improvements thereto. From this decree the Right Reverend Constantin Bohachewsky, bishop of the Ruthenian Greek Catholic Church of America, appeals, contending that the court was without jurisdiction under the Revised Price Act of June 7, 1917, P. L. 388, to enter

the decree and that the petitioners are not members of the congregation nor officers or members of the corporation owning the church property, but members and officers of a schismatic organization.

We think that controversies such as this should not be decided on narrow technical lines. If they are determined on broad view (Furmanski v. Iwanowski, 265 Pa. 1; Com. ex rel. v. Stauffer, 289 Pa. 139) the parties are likely to become reconciled and their disputes to be forgotten.

Differences arose between the congregation and the bishop, he claiming that they had refused to recognize him in his ecclesiastical capacity and that they had violated the constitution, canons, doctrines and discipline of the church; among other things, that they had refused to accept the transfer of their priest to another charge and refused to receive the priest designated by the bishop in place of the one ordered transferred. As a result of the misunderstandings between the bishop and the congregation, they conveyed the church property, title to which had been vested in a corporation called St. Mary's Immaculate Conception Greek Catholic Church of Allentown, Pa., to another corporation called St. Mary's Immaculate Conception Ukranian Greek Catholic Church of Allentown, Pa. While the title was in the latter corporation, the congregation passed a resolution in the name of the original corporation to mortgage the property. When this application came before the court, it was dismissed, apparently because of the difference between the name under which the congregation had passed the resolution and of the corporation holding title to the property. Thereupon the congregation passed a resolution to reconvey the property to the original corporation, which was done, and another petition was presented to the court, upon which it acted, entering the decree appealed from. The court in the course of the proceedings said that whatever was done was done by the congregation and that the question of

where the title was vested was immaterial, because
wherever vested it was held in trust for the congregation.
The court decided that, in this proceeding to mortgage,
it would not consider the questions of church doctrine
and discipline which had arisen between the congrega-
tion and the bishop, that if they are to be litigated, this
must be in another proceeding, with which conclusion
we agree. The only matter now to be decided is the
standing of the petitioners to ask the right to mortgage
and the power of the court to authorize it.

The Revised Price Act of June 7, 1917, P. L. 388, pro-
vides that the court of common pleas shall have juris-
diction with respect to real estate "to authorize or
confirm" the mortgaging thereof in cases, inter alia,
"Where the legal title is held......by corporations of
any kind having no capacity to convey or......by a cor-
poration of any kind......and is subject to a trust of
any description whatever." The act stipulates that
where a mortgage is authorized it shall be made by trus-
tees "having a present vested interest or trustees ap-
pointed for the purpose as the court may order." "The
raising of money by mortgage on church property is
within the direct purview of the [revised] Price Act":
St. Joseph's Lithuanian Roman Catholic Church's Peti-
tion, 273 Pa. 486. The act contains a proviso "That such
court shall be of the opinion that such decree will be to
the interest and advantage of those interested therein,
and without prejudice to any trust, charity or purpose
for which the real estate or ground rent shall be held,
and without the violation of any law which may confer
an immunity or exemption from sale or alienation." Ap-
pellant contends that the court did not formally make a
finding in accordance with this proviso, but we think
while categorically it did not, such a finding is necessa-
rily implied by its sanctioning of the mortgage and its
decree.

It is also argued that the decree was improperly en-
tered over the objection of the bishop because the by-

laws of the congregation (not the corporation) provide that the bishop "Shall keep for all time the church properties entirely in his own trust, so that said church could not fall into hands of some people of other religion or nationality, and the temporal administration of the church fortune is in the hands of the church officers, under the supervision of the aforesaid Greek Catholic Ruthenian Bishop. Only the whole congregation by a majority of votes shall have the right to borrow money, to sell and transfer the properties of the church, but only with the consent, confirmation and sanction of its Greek Catholic Bishop, otherwise every such act will be illegal and invalid." In the answer filed by the bishop, he avers that he has refused to execute the mortgage. The by-law placing virtual control of the church property in the hands of the bishop contravenes the Act of April 26, 1855, P. L. 328, section 7, which provides, "Whensoever any property, real or personal, shall hereafter be bequeathed, devised or conveyed to any ecclesiastical corporation, bishop, ecclesiastic or other person, for the use of any church, congregation or religious society, for religious worship or sepulture, or the maintenance of either, the same shall not be otherwise taken and held, or inure, than subject to the control and disposition of the lay members of such church, congregation or religious society, or such constituted officers or representatives thereof." "So far as the canons of the church are in conflict with the law of the land, they must yield to the latter" : St. Joseph's Lithuanian Roman Catholic Church's Petition, 273 Pa. 486. "The congregation is the true owner of the property": Burton's Appeal, 57 Pa. 213, 217. The title to the church property is in the congregation, not in the bishop, regardless of the canons or the by-laws of the church: Krauczunas v. Hogan, 221 Pa. 213; Mazaika v. Krauczunas, 233 Pa. 138; Ryan v. Dunzilla, 239 Pa. 486; St. Joseph's Lithuanian Roman Catholic Church's Petition, 270 Pa. 73.

The court below found the following facts, among others: That the petitioners are the president, vice-president, recording secretary, financial secretary and treasurer of St. Mary's Immaculate Conception Greek Catholic Church of Allentown, and also trustees thereof and members of the congregation; that the congregation is the only one making use of the property and that the petitioners are acting in behalf of the corporation holding title to the church property and of the congregation; that the real estate is encumbered by mortgages amounting to $13,000 and a judgment for $341; that the church property was in a dilapidated and unsafe condition and that repairs and improvements were necessary; that the congregation by proper action authorized the repairing and improving of the church property which had been accomplished at a cost of $19,998.70, all of which had been liquidated except the sum of $6,-700; that the petitioners were empowered by the vote of a majority of the members of the congregation to petition for permission to execute and deliver a mortgage on the church property, the money from which to be used to satisfy the liens on the property and to discharge the indebtedness due for the repairs of the property. Under these findings the court unquestionably possessed the power to authorize the execution and delivery of the mortgage: St. Joseph's Lithuanian Roman Catholic Church's Petition, 273 Pa. 486.

The decree is affirmed at appellant's cost.