Maceirinas et al. *v.* Chesna, Appellant.

Argued November 25, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Daniel C. Donoghue,* with him *John J. Moran* and *M. A. Kilker,* for appellant.—Under the law of this State it is clear that no matter who holds the legal title to church property, be he bishop or laymen, he or they are mere dry, passive trustees, without dominion or control over the property: Mazaika v. Krauczunas, 229 Pa. 47; St. Joseph's Lithuanian R. Catholic Church's Petition, 270 Pa. 73.

Plaintiffs, as trustees of the congregation, have no right to demand keys to the church property: Ryan v. Dunzilla, 239 Pa. 486; St. Casimir's Church, 273 Pa. 494; Zernosky v. Kluchinsky, 278 Pa. 99.

While under the law of this State the real ownership of church property is vested in the members of the congregation, as members of the congregation, it does not follow that the members of the congregation have a right to use the property in any way that they see fit if it appears that such user is contrary to the rules of the denomination worshiping in the church: Zernosky v. Kluchinsky, 278 Pa. 99; Ryan v. Dunzilla, 239 Pa. 486; Unangst v. Shortz, 5 Whart. 506.

The Act of May 20, 1913, P. L. 242, amended the Act of 1855 and provided that that control and disposition should be exercised in accordance with and subject to the rules and regulations, usages, canons and discipline of the religious body to which the church congregation or a religious society should belong: Zernosky v. Kluchinsky, 278 Pa. 99.

A religious congregation is a quasi corporation: Phipps v. Jones, 20 Pa. 263.

*Arthur L. Shay,* for appellee, cited: Lewis v. R. R., 220 Pa. 317; Regan v. Davis, 290 Pa. 167; Com. v. Bank, 293 Pa. 404; Lane v. Nelson, 79 Pa. 407; Ryan v. Dunzilla, 239 Pa. 486; Zernosky v. Kluchinsky, 278 Pa. 99.

OPINION BY MR. JUSTICE KEPHART, January 13, 1930:
This is a bill brought by the trustees of the St. Joseph Lithuanian Roman Catholic Church, an unincorporated religious association, against the priest in charge of the church. The bill raises four questions: (1) The right of the trustees and the congregation to hold meetings on the church property, in opposition to the pastor's wishes; (2) the right of the trustees and the congregation to require the pastor to give the keys of the prop-

erty to them and to refrain from refusing them access thereto; (3) the right of the congregation to have paid to its treasurer moneys received for the sale of the cemetery lots belonging to the association; (4) the right of the congregation to have paid to its treasurer rentals received from the schoolhouse belonging to the association. The lower court decided all four points in favor of the trustees and entered a decree to that effect.

The policy of the State, with respect to the ownership of property by religious organizations, is embodied in the Act of April 26, 1855, P. L. 328, which, to remedy the situation that existed in relation to property in the hands of ecclesiastical bodies, to clarify the law and to give expression to the then prevalent thought, lodged the absolute ownership of property in the lay members of the church, subject to and impressed with the uses to which it was dedicated. That ownership carried with it the right to receive and control, for the purposes dedicated, the revenues, rents, issues and profits derived from the church property: Ryan v. Dunzilla, 239 Pa. 486, 491; Mazaika v. Krauczunas, 229 Pa. 47, 53. It also included the right to possession and use of church property other than that necessarily and intimately related to and connected with church worship (Zernosky v. Kluchinsky, 278 Pa. 99), and the latter may be subject to the control of the laity if the preservation, maintenance or reconstruction of the church is involved.

Appellant contends, however, that the amendatory Act of May 20, 1913, P. L. 242, changed the law by moving the dominant control from the congregation to the ecclesiastical authorities. The first part of the act makes use of much the same language as the Act of 1855, which placed church property under the ownership, control and disposition of the lay members, but it is urged this is modified by making such control "subject to the rules and regulations, usages, canons, discipline and requirements of the religious body or organization to which such church, congregation or religious society shall be-

long." The amendatory act carries as its major purpose the idea that the congregation shall be the owner of the property, and the qualifying clause is intended to regulate the manner of control and disposition, but not to deny their inherence in the lay members. Any rule or church canon which does not operate so as to deprive the congregation of its ultimate power to control and dispose of property, for the purpose for which it was dedicated, would be a valid regulation. A canon of the church which places the ultimate or effective control and disposition of property in the ecclesiastical authorities would cause part of the act to be void, as it defeats the major legislative provision embodied therein, which was the basis of the Act of 1855: St. Mary's Immaculate Conception Greek Catholic Church's Petition, 296 Pa. 307. Control and disposition necessarily carry with them all incidents of real as well as other property not particularly exempted in the act; that is, the right to receive the income, rents and profits therefrom and dispose of them for church purposes.

A canon which authorizes and directs the parish priest to preside at and be a member of the board of trustees is an enforceable rule, but one which legislates that no meeting may be called, except by him, would be unlawful as in effect nullifying the lay control. The same is true with respect to congregational meetings. A rule forbidding such meetings to be held for business or administrative purposes, except at the call of the pastor, would be void, while this rule would no doubt be valid as it pertains to the discipline, conduct or doctrinal matters of the members of the congregation. We stated in Zernosky v. Kluchinsky that there was a dual control; so there is, and such control may include the voice of the ecclesiastical authorities in congregational meetings.

To hold that control and disposition have definite ends in view is far from saying that the church authorities cannot take part with the congregation in matters rela-

tive to the administration or disposition of property, or take steps to prevent an actual abuse of its dedicated use. A church canon which provides that the meeting should not be held in the place of worship itself would be a valid regulation if there was on the property another room in which the meeting might be held. A church rule or custom which permits the pastor to have the keys to the room where worship is conducted, is a proper regulation, but the pastor could not refuse the use of this room if the congregation decided to use it for business meetings, there being no other adequate room for the purpose.

The trustees, while they hold the bare legal title, exercise other duties than those of mere dry trustees; they are, under the rules of the church and the record before us, active trustees in the management of the church property. It follows from what has been said that the congregation, or the trustees as its representatives, have a right to receive and hold the money from the sale of cemetery lots, the rent from the schoolhouse and other income except as designated by the act. This answers all the questions submitted. The final decree of the court below was too broad, and it is modified in the following manner: It is ordered, adjudged and decreed that the Rev. Pius Chesna, the defendant named, be restrained perpetually from preventing the trustees, or the congregation, or both, from holding meetings in the basement of the church or in the schoolhouse for business or congregational purposes connected with the church property, and that he supply them with the keys necessary for gaining access thereto, or, on demand, open these buildings or rooms for their use as aforesaid, and further, that he be restrained perpetually from receiving and withholding moneys from the sale of lots in the cemetery belonging to the congregation, and from renting any of the church property and receiving and withholding the rents therefor. Also, that he account to the congregation for and pay over promptly to its

treasurer, all moneys received by him for cemetery lots, for burials in the cemetery, and for the renting of any part or parts of the property belonging to the congregation. It is further ordered and decreed that he pay the costs.

As modified, the decree is affirmed at the cost of appellant.