St. John the Baptist Russian Orthodox Greek Catholic Church *v.* Fenno et al., Appellants.

Argued April 10, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*George I. Puhak,* with him *Conrad A. Falvello,* for appellants.

*R. Lawrence Coughlin,* with him *J. Gordon Mason* and *J. Semionev Russin,* for appellee.

OPINION BY MR. CHIEF JUSTICE FRAZER, May 22, 1933:

The issue before us on this appeal concerns which of two religious organizations has title to a church property in the Borough of Nanticoke, which, for a number of years, has been in possession of the plaintiff congregation. The court below, after an extensive hearing on a bill, cross bill, and answers, held title to be in plaintiff and defendants appeal from the resulting decree. The situation as found by the court below and as indicated in its adjudication is as follows:

The St. John's Greek Catholic Hungarian Congregation of Hanover, in the Borough of Nanticoke, was organized by persons in that vicinity, in the year 1910, as an unincorporated religious organization. This congregation, on October 3, 1910, purchased from Jozep Estok and wife two tracts of land situated in the borough, which were conveyed to John Washco, John Fenno, John Boback and Peter Boback, "in trust for St. John's Greek Catholic Hungarian Congregation of Hanover in the Borough of Nanticoke, Luzerne Co., Pa." A church building was erected thereon in which religious services were conducted.

At a congregational meeting held November 30, 1914, it was unanimously resolved that the St. John's Greek Catholic Hungarian Congregation should be incorporated as a Russian or Greek Orthodox Church and the church property conveyed to the corporation. A charter was granted on January 11, 1915, by order of the Court of Common Pleas of Luzerne County, to "Saint John the Baptist Russian Orthodox Greek Catholic Church, Hungarian Congregation of Nanticoke, Pa.," the application stating that the corporation was formed for the purpose of worshiping Almighty God "according to the faith, doctrine, creed, discipline and usages of the Russian Orthodox Greek Catholic Church," and that "Any property, real or personal, which shall hereafter be bequeathed, devised or conveyed to said corporation shall be taken and held, to enure to it, subject to the control and disposition of the lay members thereof, or constituted officers or representatives thereof as shall be composed of a majority of lay members." John Boback, Peter Boback and John Fenno, three of the trustees for the property held by the parent church, were named in the charter application as trustees of the new church, and Peter Boback and John Fenno signed the application as members.

Following incorporation, John Boback, Peter Boback and John Fenno, as remaining trustees for property of

the original congregation, on January 27, 1915, executed a deed of conveyance of the property to themselves and four others "in trust for St. John the Baptist Orthodox Greek Catholic Church, Hungarian Congregation of Nanticoke, Pa.," as they had been directed to do by the congregational meeting above mentioned, and the property was thenceforward used by the congregation under its new designation, and the religious exercises conducted according to the Russian Orthodox ritual.

In July, 1930, John Fenno and four other members of the original congregation—which had not been in existence since its incorporation as "Saint John the Baptist Russian Orthodox Greek Catholic Church," etc.,— joined with others in securing from the Court of Common Pleas a charter for "Saint John's Greek Catholic Hungarian Congregation of Hanover in the Borough of Nanticoke, Luzerne County, Pa." (defendant here), the application for the charter providing that the "congregation shall always remain in allegiance with and obedient to the Holy See of Rome and the Priests and trustees of this congregation shall always remain in union with said Apostolic See"; and on August 11, 1930, John Fenno, the sole survivor of the trustees designated in the deed from Jozep Estok and wife under date of October 3, 1910, executed a deed purporting to convey to this new corporation, the defendant here, the property in question, upon which the church had meantime been built and which he had previously joined in conveying to plaintiff organization. It is from the order of the court below cancelling this later deed that defendants appeal.

Defendants contend that the congregation incorporated in 1930 under the discontinued name of the group organized in 1910, is its true successor, entitled to the property in question, alleging that the early congregation was organized and the property purchased and put in trust for a Uniat Greek Church, affiliated with the Roman Catholic Church and recognizing allegiance to the Pope of that church, whereas the plaintiff congrega-

tion was organized as a Russian Orthodox Greek Catholic Church, which does not recognize the Roman Catholic Pope as its head, and that the deed of January 27, 1915, conveying the property to plaintiff Russian Orthodox Church was a diversion of the trust from its original uses and trusts and, consequently, invalid. We agree with the court below that this contention was not proved.

The evidence indicates, as the chancellor states, that at the time the original church was organized in 1910 it was for the purpose of providing a place of worship for those in the vicinity of Nanticoke who desired to worship according to the Greek Rite, regardless of whether they were Greek Russian Orthodox Catholics or Uniat Greek Catholics, and without a definite understanding on the subject of which rite should be followed. There is no proof that this congregation had a constitution or by-laws or had adopted any specific ritual or faith. For several years the church was without a regular or permanent priest but called upon priests from neighboring churches to officiate for them, at times a Roman Catholic, at other times a Russian Orthodox priest. The first permanent priest, engaged in 1913, was of the Russian Orthodox faith, as were his successors. Moreover, when, in 1914, the congregation of the parent church voted to incorporate and transfer its property to the corporation, it was, as has been said, stipulated that the incorporated church was to follow the Russian Orthodox rite. Defendant Fenno, a member of the original body and a trustee of the property from the beginning, who joined in transferring it to the Russian Orthodox Church of which he was one of the incorporators, must be assumed to have been aware of these facts. The court below correctly held that, "The conveyance of the real estate by Fenno and others in 1915 to trustees for the use of the (Orthodox) congregation therein referred to, like the earlier conveyance from the Estoks in 1910, constituted an executed legal estate in the congregation itself

(Krauczunas v. Hoban, 221 Pa. 213) ; and the persons acquiring title for the use of the congregation were dry trustees without any power in its management: Mazaika v. Krauczunas, 233 Pa. 138. If the conveyance from Fenno et al. in 1915 [had] involved a sale or disposition of the property, authorization of the court would have been requisite (Act of April 18, 1853, section 2, P. L. 503, now superseded by the Act of June 7, 1917, section 2, P. L. 388; Burton's App., 57 Pa. 213-21; Seif v. Krebs, 239 Pa. 423), but the conveyance did not involve a sale of the church property or a diversion of it from the purpose for which it had been procured and used. See First Regular Baptist Church v. Allison, 304 Pa. 1." This disposes of defendant's further contention that the transfer of the property in 1915 was invalid because not authorized by order of court. The chancellor pertinently calls attention to the fact that if the conveyance of 1915 were void for such a reason, so also would be the conveyance by Fenno, as surviving trustee, in 1930, no authority from the court for the latter conveyance appearing on the record.

During the fifteen years which elapsed from the incorporation of the Russian Orthodox Greek Catholic Church in 1915 until defendants set up the new Greek Catholic Congregation in 1930, approximately $30,000 was expended on improvement of the property by the membership, which increased from 68 to 157 in that time. Of the 68 members of the original organization and of the body incorporated in 1915, only five became affiliated with the 1930 organization, four of whom had taken an active part in the incorporation of 1915, or the transfer of the property at that time, or both, and all having continued as members of the Russian Orthodox Greek Catholic Church until 1930. As stated by the court below, "Under such circumstances clear proof should be required to justify a decree by a chancellor that would in effect take the property from those who had, in good faith, improved it on the faith of a re-

corded title and charter which designated that 'the faith, doctrine, creed, discipline and usages' to which said church should be subject was that of the Russian Orthodox Greek Catholic Church."

We see no occasion for discussing the further questions raised by appellants. It is clear the chancellor and the court below in banc correctly concluded that, so far as the cross bill is concerned, neither the individual members of defendant corporation nor the corporation itself has rights that can be asserted as against plaintiff corporation and its present membership.

The decree is affirmed at costs of defendants.