## The Florence Crittenton Circle of Wilkes-Barre, Pennsylvania, v. Kotuna

*S. M. R. O'Hara*, for plaintiff.

*E. K. Herskovitz*, for defendant.

McLEAN, P. J., May 24, 1938.—This case is before us upon a case stated as follows:

"The parties to this case stated, by their attorneys, agree to the following facts:

"1. That by decree of the Court of Common Pleas of Luzerne County, entered to no. 34, March term, 1910, and recorded in the office of the recorder of deeds in and for the said county in charter book no. 7, page 63, 'The Florence Crittenton Circle of Wilkes-Barre, Pa., was incorporated as a corporation of the first class according to the Act of April 29, 1874, P. L. 73, and the purpose for which said corporation was created is as follows: 'The purpose for which the corporation is formed is supporting and maintaining an institution for the care and encouragement of erring and unfortunate women who desire to lead a better life, or preventing unprotected young women from falling and a temporary home for young children.'

"2. That on or about January 28, 1909, said corporation purchased certain real estate situate in the City of Wilkes-Barre, Luzerne County, Pa., hereinafter more particularly described and referred to, which by request of said corporation was conveyed by Fred J. Stegmaier and Amelia Stegmaier, his wife, to Charles N. Loveland for the sum of $14,000 by deed dated January 28, 1909, and recorded in Luzerne County in the office of the recorder of deeds in deed book 452, page 321.

"3. On January 28, 1909, Charles N. Loveland executed his bond to secure the payment of $7,000 as part of the purchase money paid for the said premises.

"4. On April 27, 1921, Charles N. Loveland executed, acknowledged, and delivered his declaration, which appears of record in the office of the recorder of deeds in and for Luzerne County in deed book 545, page 574, and which by reference thereto is made part of this case stated, wherein he stated:

" 'I, the said Charles N. Loveland, do by these presents, make known, admit and declare that the said premises were conveyed to me, and that I hold the same in trust only for the use and benefit of "The Florence Crittenton Circle of Wilkes-Barre, Pa.," a corporation of the Commonwealth of Pennsylvania, subject to the payment of the mortgage to Fred J. Stegmaier aforesaid, which has been reduced to $6,000. And I do further admit that the residue of the consideration for said deed to me was paid by said corporation.

" 'And I for myself, my heirs, executors or administrators, covenant and agree with the Florence Crittenton Circle of Wilkes-Barre, Pa., that I or my heirs shall and will convey so much of said premises as now stands of record in my name, by good and sufficient deed to the Florence Crittenton Circle of Wilkes-Barre, Pa., whenever and as soon as said mortgage to Fred J. Stegmaier shall have been paid off, and my liability thereon extinguished, and that free from all incumbrances thereon by me.'

"5. That included in the premises conveyed as aforesaid by Fred J. Stegmaier is the surface or right of soil of and to that certain lot, piece or parcel of land situate in the City of Wilkes-Barre, Luzerne County, Pa., bounded and described as follows, to wit: . . . [describing the land]

"6. On or about April 1, 1938, Israel Kotuna offered in writing to purchase the premises described in the preceding paragraph for the sum or price of $8,500 in cash, and deposited thereon the sum of $500; title to be free of liens or incumbrances.

"7. By resolution adopted by the Florence Crittenton Circle of Wilkes-Barre, Pa., on April 6, 1938, the corporation accepted the said offer of said Israel Kotuna to purchase the premises for the sum or price of $8,500 and did authorize the president, Helen Burnside, and the secretary, Florence A. Long, of said corporation to execute a deed for the premises aforesaid and deliver the same upon payment of the agreed consideration, and did constitute and appoint Helen Burnside, attorney in fact to acknowledge such deed and to pay the principal, interest, and costs of any lien imposed upon said premises. Said resolution was approved by a majority of the members of the corporation at a regular meeting duly convened on April 6, 1938, upon proper notice of the purpose thereof.

"8. On May 5, 1938, Charles N. Loveland and Mabel Loveland, his wife, executed and acknowledged a deed in fee for the land above mentioned and described, to the Florence Crittenton Circle of Wilkes-Barre, Pa., and delivered the said deed in escrow to S. M. R. O'Hara, attorney, to be by her placed upon record simultaneously with the deed mentioned and referred to in the next succeeding paragraph.

"9. That on May 5, 1938, the Florence Crittenton Circle of Wilkes-Barre, Pa., tendered to said Israel Kotuna its deed for the premises aforesaid wherein Charles N. Loveland, trustee for the Florence Crittenton Circle of Wilkes-Barre, Pa., acting in accordance with the said

declaration of trust recited and referred to aforesaid, and Charles N. Loveland individually and Mabel Loveland, his wife, being all parties who are or may be interested in the premises described, did join, and did demand from said Israel Kotuna payment of the agreed consideration, to wit, $8,500.

"10. It being understood, and it is agreed, that the Florence Crittenton Circle of Wilkes-Barre, Pa., undertook and was ready to pay to Miners National Bank of Wilkes-Barre, Pa., trustee for Henry P. Plumb Estate, assignee of the mortgage given by Charles N. Loveland to Fred J. Stegmaier and referred to in paragraphs 3 and 4 of this case stated, the balance of principal, interest, and costs due thereon and secure satisfaction of record on said mortgage.

"11. That the purpose of having Charles N. Loveland individually and Mabel Loveland, his wife, join in the conveyance was to secure their disclaimer of record of any interest in said property.

"12. That the said Israel Kotuna refused and still refuses to accept the deed and to pay the balance of the purchase price therefor, viz., $8,000, averring that the deed recited does not convey a marketable title for the reason that the title of the Florence Crittenton Circle of Wilkes-Barre, Pa., to the real estate sought to be conveyed therein is impressed with a charitable trust.

"The following question is therefore submitted for determination of your honorable court:

"1. Is the legal title sought to be conveyed by the grantors aforesaid impressed with a charitable trust?

"If the court shall be of the opinion that the grantors' title is impressed with a charitable trust, then judgment shall be entered in favor of defendant unless 'The Florence Crittenton Circle of Wilkes-Barre, Pa., shall secure authorization under the Revised Price Act of June 7, 1917, P. L. 388, to sell and convey said premises to said Israel Kotuna for the sum or price of $8,500. If the court shall be of the opinion that the grantors' title is not im-

pressed with a charitable trust, then judgment shall be entered in favor of plaintiff for $8,500 with costs."

It thus appears that plaintiff corporation was incorporated under the Act of 1874, supra, as a nonprofit corporation, and is now governed by the provisions of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, the pertinent provisions of which are as follows:

"Section 3. Applicability and Acceptance of Act.—A. Every corporation of the first class, heretofore organized and incorporated under the Corporation Act of 1874, its amendments and supplements, and every corporation heretofore created by any special act or formed under any general act, which has accepted in any manner whatsoever the Constitution of Pennsylvania, and which, if not existing, would be required to incorporate under this act, shall hereafter be subject to the provisions of this act without formal reorganization hereunder, and shall be deemed to exist under this act. The provisions of this act shall govern all such corporations heretofore incorporated in this Commonwealth. . . .

"Section 302. General Powers.—Subject to the limitations and restrictions contained in this act or in its articles, every nonprofit corporation shall have power . . .

"(5) To sell and convey, lease as lessor, and otherwise dispose of all or any part of its property and assets. . . .

"Section 308. Procedure to Borrow Money and to Acquire or Dispose of Real Estate.—Unless its articles or by-laws provide for the approval of another body, a nonprofit corporation shall not borrow money, or purchase, sell, lease away, or otherwise dispose of any real estate, unless and until a resolution authorizing the same shall have been approved by a majority of the members of the corporation at a regular or special meeting, duly convened upon proper notice of this purpose. A resolution of the members authorizing the borrowing of money need not specify the particular sums, rates of interest, or times of maturity of the loans, but such items may be

agreed upon and authorized by the directors of the corporation. Every nonprofit corporation may mortgage, sell, lease away, or otherwise dispose of any of its real estate without application to, and the authorization or confirmation of, any court, except in those cases where the Revised Price Act of one thousand nine hundred and seventeen, approved the seventh day of June, one thousand nine hundred seventeen (Pamphlet Laws, three hundred eighty-eight), and its amendments and supplements, confers jurisdiction upon the orphans' court or the court of common pleas of a particular county to authorize or confirm the selling, leasing, conveying upon ground rent, or mortgaging of real estate by a corporation. All proceeds derived by a nonprofit corporation from any loan, sale, lease, ground rent, or mortgage, shall be faithfully and specifically used for or applied to the lawful activities of the corporation, and in case such proceeds are derived from any real estate subject to a trust, the trust shall be impinged upon such proceeds."

The corporate powers and duties of a charitable corporation, before the enactment of the Nonprofit Corporation Law of 1933, supra, and as affected thereby are well stated in the following quotation from Pennsylvania Corporation Laws 1933, annotated by E. Russell Shockley, at page 208:

"In Pennsylvania, the visitorial and supervisory powers of the Commonwealth over charities are exercised through the orphans' court or the court of common pleas, under the provisions of the Revised Price Act of 1917. These courts have jurisdiction of the control and direction of managers and trustees in the use and disposition of property belonging to incorporated charities. Application of the John C. Mercer Home (Fisher's Appeal), 162 Pa. 232 (1894).

"In Pennsylvania it is well settled that a religious, scientific, educational or charitable corporation must petition the court for permission to sell, lease or mortgage its real property. Burton's Appeal, 57 Pa. 213 (1868);

Application of the John C. Mercer Home (Fisher's Appeal), supra; Nauman v. Weidman, 182 Pa. 263 (1897); Seif v. Krebs, 239 Pa. 423 (1913); Phillips v. Westminster Church, 225 Pa. 62 (1909); St. Mary's Immaculate Conception Greek Catholic Church's Petition, 296 Pa. 307 (1929); Revised Price Act of 1917, sections 1 and 2, as amended.

"This act specifically provides that recourse to the court for the sale, leasing or mortgaging of corporate real estate is not necessary except in those cases specifically covered by the Price Act, viz.: (1) Where the corporation has no capacity to convey, which situation is now rare and will not arise under this act; (2) Where the corporation holds property in excess of the amount permitted by its charter or by law, which situation will seldom arise under this act; and (3) where the corporation holds property in trust, which situation will arise more than ever under this act."

Obviously the powers and duties of charitable corporations are enlarged and defined under the Act of 1933, supra, and the decisions of our courts (prior to the latter enactment) construing the Act of 1874 and its amendments, as to the powers of sale of real estate, are not applicable.

Defendant contends that the real estate in question falls within the fifth classification under the Revised Price Act, to wit: "Where the legal title [to real estate] is held: . . . By a corporation of any kind, or individual or individuals, and is subject to a trust of any description whatever," and further contends that the trust arises through the declaration of trust referred to in paragraph 4 of the case stated. The trust instrument discloses that the power is conferred upon the trustee to convey the real estate in question to plaintiff corporation upon the payment of the balance due upon a purchase-money mortgage, and the trustee covenants and agrees so to do. The trustee has conveyed by good and sufficient deed the title to the real estate in question to plaintiff corporation and.

thus the trust is executed and does not require a decree of the court to pass title: Seif v. Krebs, 239 Pa. 423.

A deed from the trustee, joined in by the equitable owner, would have been sufficient to pass the title (Wilczewski v. Wilczewski et al., 110 Pa. Superior Ct. 561, 570), unless the power to convey any real estate of a charitable corporation is to be exercised only in pursuance to a decree of the court.

If it is contended that all real estate held by charitable corporations is impressed with a trust and thus can be conveyed only in pursuance to a decree of the court, then section 308 of the Act of 1933, supra, provides a complete answer. The statute in question provides that real estate purchased by a charitable corporation is to be held for the purposes of the corporation, and the proceeds derived from its sale must be used for the lawful activities of the corporation, but it may be freely conveyed in the manner set forth in the statute, and the power to sell only such real estate as is granted, conveyed, bequeathed, devised, or otherwise vested in a charitable corporation, subject to a specific trust, is to be exercised under the Revised Price Act.

Here the real estate was not dedicated to a charitable use, but was acquired by plaintiff corporation under its corporate powers and for its charter purposes, and whatever is received from the use or sale of real estate possessed by it is to be applied in furtherance of the purposes for which it was incorporated. In such a case it is not the real estate itself that is impressed with a trust, but the proceeds from its use or sale.

We conclude, therefore, that plaintiff's title to the real estate in question is not impressed with a trust, and the deed executed by the corporation will pass a marketable title without the authority of the court under the Revised Price Act.

Now, May 24, 1938, judgment is entered for plaintiff and against defendant in the sum of $8,500.