Shipp et al., Appellants, *v.* Dougherty.

Argued January 9, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN and PATTERSON, JJ.

*Clarence E. Hall,* of *Orr, Hall & Williams,* with him *Taylor, Schrader & Riskin,* for appellants.

*Walter B. Gibbons,* for appellee.

OPINION BY MR. JUSTICE LINN, March 25, 1940:

The plaintiff-executors asked for a decree requiring the payment to them by defendant, as trustee, of a balance claimed on a building contract, and, in addition, declaring a lien therefor on the church of St. Joseph's Roman Catholic Parish in South Bethlehem, Pennsylvania, with process for satisfying the money decree. They are the executors of Benedict H. Birkel, deceased,

who in 1914 made a contract with Archbishop Prendergast of Philadelphia to build a parish church for $32,000. The land on which the church was subsequently built had been owned by Birkel and his sister and in 1913 was conveyed by them to the Archbishop for the use and benefit of the members of the parish. The church was completed in 1919, accepted, and thereafter used by the parish congregation. The Archbishop was not, by virtue of his office, the agent of the lay members (compare *Reifsnyder v. Dougherty,* 301 Pa. 328, 152 A. 98), but it does not appear that they had not approved the contract; as they accepted, used, and paid for the church, we assume, for the purposes of this case, that they had approved it.

Plaintiffs' testator died May 27, 1934. There is no evidence that in his lifetime he claimed any unpaid balance.

This bill was filed June 29, 1937, claiming $4,885.21 with interest from July 2, 1931. No members of the congregation were made parties. The sole defendant is Cardinal Dougherty, whose diocese includes South Bethlehem. Archbishop Prendergast died in 1918 leaving a will duly probated and containing provisions[1] for the

---

[1] "All the property and effects, real and personal, whatsoever and wheresoever in me vested or with me deposited, I give, bequeath and devise unto my executors hereinafter named and to the survivors of them, his heirs and assigns. In trust to assign and convey the same in fee simple, and forever unto the person who shall succeed me by appointment made as Archbishop of Philadelphia upon all and singular the same uses and trusts and with the like powers upon which the said property and effects shall have been held by me immediately preceding my decease.

"I hereby declare that I have no property or effects to be accounted for by my executors or to descend to my lawful heirs or next of kin and that this will is made in order to transmit all titles and property in me legally vested according to my duty and as I am authorized by law to do, that all trusts, confidences and powers in me reposed may be faithfully executed and performed in all respects as I am authorized and bound to execute and perform the same."

passing to his successor in office title to church property held by him. To give effect to his will, his executors delivered the deed, to the South Bethlehem parish property to Cardinal Dougherty.

In his answer to the bill, the defendant averred that he had been credibly informed that the full sum of $32,000 had been paid to plaintiffs' testator and set forth dates and amounts supporting the averment. The case was heard on bill, answer, and proofs, and a decree dismissing the bill was entered. Plaintiffs have appealed.

The defendant is not seeking to avoid the payment of a just debt; he did not, as he might have done, challenge the jurisdiction in equity nor did he assert that the claim was barred by time. He contends that if the contractor was not paid in full, the obligation to pay was on the lay members of the parish for whose benefit and on whose behalf the contract was made in 1914; that he is merely the holder of the record title on a dry trust. That view was accepted by the learned court below and required the dismissal of the bill.

It is unnecessary to discuss the nature and scope of the liability[2] of a trustee. Neither the defendant nor his predecessor Archbishop Prendergast was an active trustee, and the record does not show that the defendant assumed any obligation under the contract. Under the Birkel deed, considered in the light of the statute then in effect, the Archbishop held merely the record title "subject to the control and disposition of the lay

---

[2] See Bogert, *Trusts and Trustees,* sec. 712-721; Scott, *Liabilities Incurred in the Administration of Trusts* (1915) 28 Harv. L. Rev. 725; Stone, *A Theory of Liability of Trust Estates for the Contracts and Torts of the Trustee* (1922) 22 Col. L. Rev. 527; *Mathews v. Stevenson,* 6 Pa. 496; *Stevenson v. Mathews,* 9 Pa. 316; *Manderson's Appeal,* 113 Pa. 631, 6 A. 893; *Woddrop v. Weed,* 154 Pa. 307, 26 A. 375; *Young v. Weed,* 154 Pa. 316, 26 A. 420; *Yerkes v. Richards,* 170 Pa. 346, 32 A. 1089.

members" of the parish.[3]   The conveyance by his executors to the defendant of the record title "subject to the control and disposition of the lay members" of the parish did not impose on the defendant the obligation to pay for the church.

Decree affirmed at appellants' costs.

---

[3] Act of April 26, 1855, P. L. 328, as amended: "Whensoever any property . . . shall hereafter be . . . conveyed to any . . . bishop, ecclesiastic, or other person, for the use of any church, congregation, or religious society, for religious worship . . . the same shall be taken and held subject to the control and disposition of the lay members of such church, congregation, or religious society. . . ." See the Krauczunas cases: 221 Pa. 213, 70 A. 740; 229 Pa. 47, 77 A. 1102; 233 Pa. 138, 81 A. 938; *Carrick v. Canevin*, 243 Pa. 283, 90 A. 147; *St. Mary's Greek Catholic Church's Petition*, 296 Pa. 307, 145 A. 862; *Maceirinas v. Chesna*, 299 Pa. 70, 149 A. 94.

This Act was again amended by the Act of 1935, P. L. 353, 10 PS section 81, providing that church property shall be held subject to the control "of such officers . . . having a controlling power according to the rules, regulations, usages, or corporate requirements of such church". By the rules of the Roman Catholic Church, the control of the church property is in the pastor of the church subject to the consent of the Bishop in extraordinary matters; see Philadelphia Legal Intelligencer for December 11, 1935, p. 4, col. 1 (vol. 93, p. 1178).